JH

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ROGER D.BRYANT

V

CA 06 321ML

ASHBELL T. WALL,DIRECTOR OF
THE DEPARTMENT OF CORRECTIONS
AND THE STATE OF RHODE ISLAND

Ca.No:__________

PETITION FOR WRIT OF CERTIORARI

Petitioner, Roger D.Bryant, who dose petition this Honorable Court to issue a Writ of Certiorari for the purpose of correcting an injustice in the deniel of petitioner's appeal from petitioner's post conviction.

Petitioner states that his past Formal pleadings have been less than proefessional. Petitioner now ask's of this Court to treat petitioner's pleadings herein to a less stringent standard than that of an attorney. HAINS V KERNE 404 US 519-520, 92 S.Ct. 594-595, 30 L,Ed2d 653

Petitioner further states that if this Court should need a more precie petition then petitioner request the assistance of an attorney.

Respectfuly Submitted

ROGER D.BRYANT PRO-SE
P.O.Box 8274
Cranston, R.I. 02920
07/17/06

Certified MAil Receipt's

State's Attorney
7006 0810 0000 4647 1569

Federal Court
7005 1160 0003 3977 1949

# MEMORANDUM IN SUPPORT OF WRIT OF CERTIORARI

Petitioner states that the Rhode Island Supreme Court is in error denying petitioner's arguments in his Appellant pre-brief, from the deniel of petitioner's post conviction. **APP. (6)**

The Court stated in its opinion: "The extent of Cass' objections to O'Connor's testimony or to the admission of the victim's medical records is not entirely clear from the record before us." **APP. (5)p5** The State Court is in error!! It is petitioner's understanding, from the Court's statement, that the Court did not read petitioner's arguments of ineffective assistance of counsel thoroughly.

Petitioner submitted an eight (8) page argument in his pre-brief outlining Precisely how petitioner's trial attorney, Fredrick Cass, was ineffective in his representation of petitioner. **APP. (4)p5-9,12-14** For the State Court to say the record in not entirely clear is in error.

Petitioner cited in his appellant pre-brief, **STRICKLAND V WASHINGTON**, to show the Court that he understood that in order to prove his issue of ineffective assistance of counsel he had to meet the two prong test in **STRICKLAND**. Petitioner also knew, and understood, that in order to prove his issus under **STRICKLAND** he had to prove it by the preponderance of the evidence.

In petitioner's Appellant pre-brief petitioner did prove by the preponderance of the evidence that Cass was ineffective in his representation of petitioner. Petitioner asked Cass during petitioner's direct examination why he din't object to the State calling Annie O'Connor as a witness, when she was not included in the State's answer to discovery. **APP. (3)p10L21** Cass had thereafter testified

several times, in direct examination and in cross-examination that he had objected to O'Connor not being on the State's witness list, and that his objection's where part of the record. **App. (3)p10,11, 29,30,59,74-80**

All that was required of petitioner was to prove that infact Cass never made any such objections. Petitioner had proved that by pointing out to the Court that no where in the trial transcripts does it show that Cass objected to O'Connor not being on the witness list.

Cass testified that the objections he made were made pretrial. **App. (3)** Where petitioner was only given the transcripts of the trial for the purpus of an appeal, it was the State's burden to then produce any pre-trial record to show that Cass had made the objections he claimed he did. The State did not, even after the suggestion of the Court, produce any kind of a record.**App. (3)p14**

The only attempt the State had made to show somekind of a record was during the State's corss-examination of Cass. The State's attorney showed Cass a supplemental to discovery claiming that it was the State's notification of O'Connor as a witness. **App. (3)p74-75** In a prior hearing the State's attorney explained to the Court that in March the State had put the defense on notice by supplemental discovery saying that Annie O'Connor, a nurce practitioner was going to testify. **App. (2)p6L11-23**

However, when the State's attorney showed Cass the supplemental Cass denied the State's claim by saying "Well, I remember this little gem,sure do." Cass went on to say that it was given to him by the State's attorney and that it said "...that thing says that were going to call an unnamed nurse practitioner to give expert testimony.." **App. (3)p75L1-25**

The State reinforced Cass' statement of an "unnamed" witness by saying to Cass "Is it fair to say this was all you got reguarding Annie O'Connor and it doesn't mention her name or anybody else's?" Cass replyed "Thats correct" **App. (3)p75L1-4** Cass should have objected as to the State violating Rule Sixteen (16) of the Rule of Criminal Procedure.

Petitioner prove, by the preponderance of the evidence, that Cass was ineffective by not objecting to O'Connor's testimony as being irrelavant. O'Connor testified to signs of sexualy abused children. She testified, reading from medical reports, that were <u>not</u> proven to be the alleged victim's, that the alleged victim had a condition she characterized as reflex relaxation.**App. (1)p325-330**

Petitioner proved that O'Connor's testimony was irrelavant by pointing out to the Court that the State had NOT proven that the alleged victim had at <u>anytime</u> been examined for sexyal abuse. Where as there was NO evidence produced to show that the alleged victim had been examined for sexual abuse made ANY testimony by O'Connor on signs of sexual abuse or to ANY referance to the alleged victim irrelavant.**App. (4)p6-7**

Petitioner prove, by the preponderance of the evidence, that Cass was ineffective by not objecting to the State entering into evidence medical records without NO foundation. **App. (4) p12-14**

The State used O'Connor as, some other qualified witness, to lay the foundation for medical records that were entered into evidence as state's exhibit (6). **App. (4)p12-14** As it was inproper in petitioner's case to use O'Connor as some other qualified witness, O'Connor NEVER testified that the medical records she was viewing were the alleged victim's. Therfore Cass should have objected. **App. (1) p304-330, App. (3)p5**

## PREJUDICE

In the State Supreme Court's Opinion the Court stated that absent of the testimony of O'Connor and absent the medical records, the victim's testimony on it's own would support the conviction. **App. (6)p5** The Court is in error.

Petitioner proved, by the preponderance of the evidence, that petitioner had been severely prejudiced by the testimony of O'Connor and by the medical records entered into evidence. **App. (4)**

In petitioner's appellant pre-brief petitioner stated to the Court that, after trial and after direct appeal, petitioner was only convicted of one count of first degree, count three, and one count of second degree, count four. **App. (4)p1**

In count three petitioner was convicted of anal penetration. The alleged victim testified that petitioner had put his private in her private one time a little bit. **App. (1)p249-250** The State Supreme Court says that the above testimony was sufficient to support the conviction. **App. (6)p5**

Petitioner proved, by the preponderance of the evidence, that the State had NOT met their burden in proving first degree, "ANAL PENETRATION" by the alleged victim's testimony on it's own. **App. (4)p8-9**

In the State's direct examination of the alleged victim the alleged victim testified that petitioner had put his private in her private. It was the State that defined the back private as the "BUM". **App. (1)p249L10-19** The Alleged victim testified that it was only done once, and it was only a <u>little bit</u>. As petitioner pointed out in his appellant pre-breif the above testimony would have only proven second degree. **App. (4)p8**

If, the alleged victim had said that petitioner had put his private in her private, and it hurt, that statement would allow the jury to infer that the petitioner had penetrated the alleged victim's "ANAN", even a little bit. The alleged victim testified that it DID NOT HURT. **APP. (1)p249L13**

What convinced the jury that petitioner had penetrated the alleged victim's anas, even a little bit, was the testimony of O'Connor reading from the medical records saying that the alleged victim's anas was consistent with reflex relaxation. **App. (1)p330L21-23** O'Connor had testified earlier how she examined children for reflex relaxation by spreading the buttocks and looking at the rectum. **App. (1)p325L8-25, p326L1-4**

This testimony convinced the jury that the alleged victim had been examined for sexual abuse and in that examination showed that the alleged victim had reflex relaxation and that petitioner caused this condition by penetrating the alleged victim's anas. O'Connor's testimony was fortified by the State's closing arguments. **App. (1) p513L21-22, p515L8-25, p517L15-17** The State's attorney said "We hav corroboration of that, also we've got medical corroboation, reflex relaxation. **App. above**

The State Court went on to say that in light of the victim's testimony, petitioner's own testimony, and the incriminating letter, the Court saw no indication that absent counsel's deficient performance, the result of the proceeding would have been different. App (6) This is untrue!!

Petitioner has already stated that he proved that absent of O'Connor's testimony and the medical records the alleged victim's testimony, on its own, would NOT support the conviction of first degree. As for petitioner's testimony petitioner did not testify that he penetrated the alleged victim in anyway. Petitioner only testified that he "knew" he had touched his child for an innocent reason. App. (1) p 114-116

The incriminating letter the Court speeks of is the letter petitioner had argued in his pre-brief that his pre-trial attorney, Thomas Pearlman, instructed petitioner to write while petitioner was committed to the ~~Institue~~ Institute of Mental Health. App. (4) p 11-12

Petitioner proved, by the preponderance of the evidence, that his pre-trial Attorney, Thomas Pearlman, was ineffective by instructing petitioner to write a letter explaing petitioner's side of the complaint, while petitioner was committed in the Instituion of Mental Health (IMH) there by having petitioner giving up his Fifth Amendment right against self-incrimination unintentionally.

At the concluson of petitioner's bail hearing the hearing Justice, After viewing petitioner, determined that petitioner was suffering from some kind of mental problem. The hearing Justice then committed petitioner to the IMH. The hearing Justice was specific in his instructions by stating that he wanted petitioner to undergo a complete psychiatric evaluation, not just a competency to stand trial evaluation. App(7)p20-22 While at the IMH Pearlman instructed petitioner to write a letter, to counsel, explaining petitioner's side of the complaint. In compliance of Pearlman's instruction, petitioner made some incriminating statements that petitioner had believed, at the time, to be true.

During the State's cross-examination of Pearlman the State's Attorney asked him if he had instructed petitioner to write such a letter which Pearlman replyed "I certainly did not". App.(2A)p6 L22-25 Pearlman was then asked if it was his practice to have defendant's writ such a letter. Pearlman replyed saying "I've seldome done that and I believe I did not do it in this case". Pearlman went on to say that he first saw the letter in a surprise discovery from the State. App.(2A)p8 L11-13

In petitioner's re-direct petitioner showed Pearlman the letter and asked him if it was definitely the letter he recieved in discovery, and not from petitioner. Pearlman replyed "Yes Sir." App.(2A)p21 L13-21

Petitioner proved, unquestionaly, that Pearlman had the original and that the only way he could have had the original was by petitioner giving it to him. In re-direct petitioner read to Pearlman the trial transcript of Thomas Hill. App.(2A)p21-23 In Hill's testimony the State's attorney asked Hill "Do you know what happened to the original of that document." App.(1)p294 L8-9 Hill then testified that he had called Pearlman and that Pearlman had the original. App.(1)p295-296

The question should not be, did petitioner waive his Fifth Amendment right to Self-incrimination by making copies of the letter and sending them home, or that there was, Absolute, Attorney/client privilege? But rather was it ineffectiveness of Pearlman to instruct petitioner to write such a letter, while petitioner was committed to the IMH, undergoing a "psychiatric" evaluation?

Pearlman testified that he had been an attorney for some forty years. During those forty years Pearlman had to have known what the IMH was and why people are sent there. Eventhough petitioner was not claiming an insanity defense the hearing Justice felt that, from his observation, of petitioner, that petitioner was suffering from some kind of mental problem and that he wanted petitioner to undergo, not only, a complete psychiatric evaluation but a competency to stand trial evaluation as well. App.(2)p20-22 Pearlman knowing this should have, at the very least, asked the tending psychiatrist petitioner's mental condition before instructing petitioner to do anything that might violate petitioner's rights. Pearlman was not qualified to make that kind of evaluation. Therefore he was ineffective in his representation of petitioner.

Where as the hearing Justice committed petitioner to the IMH for a "competency evaluation" Any statement petitioner made became protected by Rhode Island General Law: § 40.1-5.3-3 (n).

R.I.G.L. § 40.1-5.3-3 (n) States;

(n) Statements inadmissible.
No statements made by a defendant in the course of an examination conducted pursuant to subsection (d) or during a hearing conducted pursuant to subsection (i) or (m) shall be admissible in evidence against the defendant in any criminal action on any issue other than his or her mental condition. The statements shall be admissible on the issue of his or her mental condition even though they might otherwise be deemed to be privileged communications.

<u>Notes To Decisions</u>

4) Admissiblity of Evidence.
"The use of inculpatory statements made by an accused during a compelled submission to a psychiatric examination by the State is improper if it is intended to prove that the accused preformed the act charged;" <u>State v Johnson</u> 383 A.2d 1012 (1978) R.I.

As to count three, the State Court's Opinion is in error. As stated the Alleged victim's testimony, on it's own, would Not support the Charge of "Anal" penetration. As for petitioner's trial testimony petitioner only testified to An innocent "touch; Not to Any penetration. App(1)pL16-25

In the "letter" to Pearlman petitioner again only stated he "touched" the alleged victim; Not to Any penetration. App (8)p114

The State also claimed that petitioner had confesed in the police statement. Again, petitioner only stated, not confesed, to touching the Alleged victim, And only for An innocent reason. No statement or confession to penetration. App (9)

Petitioner states that for the reason's Above that this Court correct the State Court's Opinion And enter such Judgement that would intital petitioner his relief of A Judgement of Aquital on count three And dismissing count four.

Respectfuly Submitted

Roger D. Bryant (signature)
07/17/06

Roger D. Bryant, pro-se
P.O. Box 8274
Cranston, R.I. 02920

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ROGER D.BRYANT

V

ASHBELL T.WALL,DIRECTOR OF
THE DEPARTMENT OF CORRECTIONS
AND THE STATE OF RHODE ISLAND

Ca.No:___________

## CERTIFICATION

Petitioner states that he has sent the enclosed Petition for a Writ of Certiorari, by certified mail, to the office of the Rhode Island Attorney General at 150 South Main Street, Providence Rhode Island, 02903

Submitted By Petitioner

Roger D. Bryant

ROGER D. BRYANT, PRO-SE
P.O.Box 8274
Cranston, R.I. 02920

07/17/06