# Appendix

# #2

# Post Conviction memorandum

STATE OF RHODE ISLAND
PROVIDENCE, S.C.

SUPERIOR COURT

ROGER D.BRYANT

Vs.

GEORGE A.VOSE,Jr. AND
THE STATE OF RHODE ISLAND

CA.No: 96-5517

APPLICATION FOR POST CONVICTION RELIEF

Now comes the applicant and moves this Honorable Court for an application of Post Conviction Relief, pursuant to Title 10, Ch.9.1 Section 1 of the Rhode Island General Laws. Said applicant states the following in support of this petition;

1. That he is currently incarcerated at the Adult Correctional Institution, in Cranston, Rhode Island.

2. That the applicant was convicted in Providence Superior Court on May 24,1993.

3. The applicant was convicted of first and second degree child molestation.

4. That the applicant was sentence to a term of thirty five (35) years, thirty years to serve and five years probation.

5. That the applicant's sentence and conviction are in violation of the United States Constitution and the Rhode Island Constitution.

Wherefore, applicant asks to be afforded the opportunity to present,at a hearing, witnesses and evidence in support, after which time he asks that a promt decision be rendered by this court granting relief vacating said conviction and entering a judgement of acquital on all counts.

Respectfully Submitted

Roger D. Bryant

Roger D.Bryant, Pro-Se
08/11/01

(CERTIFIED MAIL RECEIPT No:
7099 3400 0009 4551 7137,7120

(C)

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

PROVIDENCE S.C. SUPERIOR COURT

ROGER D.BRYANT

Vs.

GEORGE A.VOSE,Jr.AND
THE STATE OF RHODE ISLAND CA.No: 96-5517

s t i p u l a t i o n

I,ROGER D.BRYANT HEREBY ENTER MY APPERARANCE, PRO-SE. AS A PRO-SE LITIGANT I REQUEST THAT I BE HELD TO A LESS STRIGENT STANDARD THAN THAT OF AN ATTORNEY. HAINES V KERNER 404 U.S. 519,30 L.Ed.2d ~~649~~. 652

ROGER D.BRYANT, PRO-SE
P.O.Box 8274
CRanston, R.I. 02920
08/11/01

**SUMMARY OF CASE**
**PURSUANT TO R.I.G.L. 10-9-1.4**

1. On February 16,1992 plaintiff was arrested by the Pawtucket Police from a warrent based on a complaint filed by plaintiff's wife alleging that plaintiff sexualy abused his step daughter.

2. On February 17,1992 plaintiff was brought before Judge Erickson for District Court Arraignemnt. Case continued for assignemnt of attorney.

3. On March 02,1992 plaintiff was brought before Judge Deribbo for Bail Hearing. Dale Anderson of the Providence Public Defenders Office was assigned as defense attorney. Case continued; Plaintiff to undergo a complete psychiaric work-up at the I.M.H.

4. On June 21,1992 after four continuances, for warn't of judge's order, plaintiff was granted home confinment. However, the next day the order for home confinment was resinded. State went before Grand Jury charging plaintiff with three (3) counts of first degree child molestation sexual assault in violation of 11-37-8.1 and three (3) counts of second degree child molestation sexual assault in violation of 11-37-8.3 A true bill returned on all counts.

5. On July 03,1992 the state filed the indictment in the Providence Superior Court at which time plaintiff was brought before judge Goldberg for arraingment. Plaintiff pled not guilty on all charges and was denied bail.

6. On May 17,1993 prior to the commencement of trial a motion by defense to supress defendant's statement to the Pawucket Police was heared and denied.

7. On May 24,1993 after trial defendant was convicted of three (3) counts of first degree child molestation and one (1) count of second degree child molestation. A judgement of accuital was granted on count six (6) and count five (5) was dismissed.

8. On October 05,1993 judgement of conviction was entered and defendant was sentenced to thirty five (35) years on each of the first degrees to run concurrent, thirty (30) years to serve and five (5) years probation/suspended. Defendant was also given a six (6) year sentence on the second degree to run consecttutive with the first degrees for a total of thirty six (36) years to serve. Defendant appealed.

9. On January 31,1996 the Supreme Court's opinion was returned. In its decision the Court sustained count one (1) and entered a judgement of acquital. Count two (2) was sustained entitling defendant to a new trial. Count two (2) was latter dismissed at the request of the state. Counts three(3) and four (4) were affirmed.

10. On April 12,1996 defendant filed a motion to reduce and correct his sentence. Both were denied. Defendant appealed but appeal was never heared.

11. On October 01,1996 defendant filed an application for post conviction relief

12. On October 18,1996 the state filed a motion to dismiss defendant's application.

13. On January 31,1997 defendant's application for post conviction was heard by Judge Israel. State's motion was denied and case continued for assignment of attorney to determin plaintiff's merts for his application.

Respectfully Submitted

ROGER D.BRYANT PRO-SE
P.O.Box 8274
Cranston, R.I. 02920
08/11/01

# LIST OF PURPOSED WITNESSES

The following is a list of purposed witnesses that will be called, AS NEEDED, either in plaintiff's direct case in chief or in rebutal of defendant's case in chief. witnesses will NOT necessarily be called in order listed.

1. Thomas pearlman, Plaintiff's criminal defense attorney.
2. Frederick Cass, Plaintiff's criminal defense attorney.
3. David Morwitz, State's attorney.
4. Annie O'Conner, Nurse at R.I. Hospital
5. Jole Lutterman, M.D. at R.I. Hospital.
6. John Veazey, Rape Crisis counselor.
7. Michael Malloy, Detective at Pawtucket Police.
8. Jean V.Bryant/Mech, Plaintiff's daughter.
9. Sharon DePina, Plaintiff's common law wife.
10. Thomas Hill, Plaintiff's friend.
11. James Blue, D.C.Y.F. investigator.
12. Marlyn Pelettier, D.C.Y.F. case worker.
13. Susan Strong-Archer, D.C.Y.F. case worker.
14. Linda Stafford, Detective at Pawtucket Police.
15. Angela Grenander, M.D. alleged victim's pediatrician.
16. William Turtle, M.D. alleged victim's pediatrician.
16. Pamela soloman, Plaintiff's friend.
17. Jean T.Bailey, Plaintiff's ex-wife.
18. Steven Bailey, Plaintiff's Friend.
19. Bruce DePina, Plaintiff's friend.
20. Lucille Paradis, Plaintiff' baby-sitter
21. Donald Allcock, D.C.Y.F. worker
22. Thomas Dwyer, D.C.Y.F. worker.
23. Christine & Linda Gagnon, Plaintiff's friend.
24. Kimberly Rivet, Plaintiff's friend.
25. Donna Boucher, Plaintiff's friend.
26. Lin Furcht, Pawt. Comm. Counselor.

H

MEMORANDUM IN SUPPORT OF PLAINTIFF'S
POST CONVICTION PETITION

GROUND 1. (A) LIMITED CONSULTATION

The defense attorney has an obligation to give his client the best posseble defense based on the situation and the information supplyed or made available by his client, and the state. If the attorney is unaware of all information possessed by the client and the state then the attorney can not make a reasonable stategy in pursuing a viable defense.

In plaintiff's case attorney's Thomas Pearlman and Frederick Cass did not consult, sufficiently, with plaintiff to learn all that they could from the many questions that would have come to the surface had they done a proper, and through investigation.

PLaintiff procured the services of Thomas Pearlman in March 1992 while plaintiff was at the I.M.H. waiting for a complete psychiatric work up. (BH-22) Mr.Pearlman met with plaintiff, at the I.M.H., for about twenty (20) minuts. PLaintiff next saw Mr.Pearlman at four (4) District Court hearings, but Mr.Pearlman did not talk to PLaintiff.

Plaintiff's next four (4) meetings with Mr.Pearlman were between April 1992 and May 1993. One time with Judith A.Carrol, Exhibit 22(A) and twice with Frdick Cass, Exhibit 22(D)(E)(F) and once by himself Exhibit 22(L) for about fifteen (15) to twenty (20) minutes for a total of about, not more than one and a half (1½) hours.

Plaintiff recieved ninteen(19) letters from Mr.Pearlman either written to plaintiff or copies of letters written on behalf of plaintiff's case. Exhibit 22(A)-(S) Pluss, plaintiff made several collect calls to Mr.Pearlman, sometimes he was there, most times not.

The above time that Mr.Pearlman and or Mr.Cass spent with plaintiff was insuffecent for them to arrive at a proper strategy to take plaintiff's case to trial where plaintiff's case was complexed.

GROUND 1. (B) LACK OF INVESTIGATION

It's not enough that an attorney talk to his client the attorney must also "investigate" the information that is given to him by the client, and the state, through discovery. Neither Mr.Pearlman and or Mr.Cass investigate any of the numerous information supplied by both plaintiff and state.

At the request of Mr.Pearlman Exhibit 22(H) plaintiff sent him a list of witnesses that would have offered evidence for an alibi defense, expert testimony, and evidence of plaintiff's good charactor. See Bench case in Trial case book Exhibit 17(A)-(S). This information was relayed to Mr.Cass. Exhibit 22(L) See Ground 2(B)

In addition to the above plaintiff sent Mr.Pearlman copies of letters from attorneys and authors of books and studies on sexual abuse that would have helped them in making a defense. Exhibits 23 (B)(C)(E)(G)(H)(I)

Defense counsel's did not interview or investigate any of the twenty six (26) witnesses listed in the state's discovery. Exhibits 15 (G)-(M) to determine the credibility of their statements, to determin their expertice and experiance in sexual abuse cases.

Defense counsel's did not interview any experts in the field of sexual abuse to rebut the state's experts and medical records.

**GROUND 2 (A) DEFENSE COUNSEL'S INEFFECTIVENESS CALLING WITNESS**

It's evident, looking at the trial record, that it was defense counsel's strategy to show to the jury that the alleged victim did not disclose, at any time, to Mr.Veazey that the alleged victim had been penetrated in the rectum by the plaintiff in hopes of rasing reasonable doubt. (Tr-[illegible]7)

Defense counsel's strategy was irresponsible and inexcusable. The state had just ended its case with an expert that stated,"looking at page (7) of state's (6) it would indicate to her that the <u>child's</u> rectum was consistent with reflex relaxation, (Tr-330) a symptom, according to the expert, that is caused by penetrating a rectum", (Tr-326) to which defense counsel made no effet to challange in cross examination of the expert leaving the jury the inferance that the accusations was true.

It would not have mattered if the alleged victim had told anyone or not that she had been penetrated in the rectum.(Tr-397,414,416,420) For defense counsel to produse a witness, and especially one such as Mr.Veazey, from the "Rape C risis Center" to try and show reasonable doubt is grossly incompetent. No jury would take the word of <u>anyone</u> over that of medical evidence, corroberated by expert testimony.

Defense counsel's ineffectiveness calling Mr.Veazey prejudiced plaintiff where it opened the door, real wide, for the state to show the jury how the alleged victim acted in counseling and infering to the jury that the alleged abuse was so dromatic to the alleged victim

that the alleged vicitm <u>needed</u> counseling. Inescents, corroberating the alleged victim's accusations.

Defense counsel continued to be ineffective when <u>he</u> had plaintiff testify. (Tr-421) Plaintiff testified, under immunity, in plainitff's suppreion hearing(Tr-93) and plaintiff had told defense counsel, Mr. Cass, that he <u>did not</u> want to testify at trial.

GROUND 2 (B) DEFENSE ATTORNEY DID NOT SUBPOENA WITNESSES

Defense counsel's did not subpoena <u>any</u> of the witnesses supplied by plaintiff that would have given testimony as to plaintiff's good charator. Exhibits 17 (A)-(S).(see <u>STATE v BENOIT</u> 697 A.2d 329 (R.I. 1997)

Defense counsel's <u>did not</u> subpoena <u>any</u> of the witnesses supplied by plaintiff and the state, through discovery, that would have given exculpatory and expert testimony that would have raised, reasonable doubt, if not actual innocents.

Unlike <u>BENOIT</u>, plaintiff, because of ineefective counsel, was not given the chanch to have the trial judge rule on whether <u>any</u> of the nummerus witnesses that would have come forward to testify that they had known plaintiff for a grate number of years and that plaintiff was of good charator and for the most part a truthfull person.

The object of laying the good charator of the accused before the jury is to induce them to believe, from the improbability that a person of good charator would have conducted himself as alleged, that there is some mistake or <u>misrepresentation in the evidence</u> by the prosecution. (see Am Ju 2d Evidence 8339)

PLaintiff has stated, from the very begining, that he "touched" the alleged victim in order to teach her good and bad touches. Plaintiff should have had the opportunity to present witnesses to

show that, as improper as some may think of plaintiff's touching of the alleged victim, he did so with the best of intentions and not as a child molester.

In addition plaintiff was denied the opportunity to present exculpatory expert testimony from Dr.Gernanda, the alleged victim's life long pediatrician, where Dr.Gernanda was the first to examin the alleged victim and found no evidence of abuse. Exhibits 3(J), 4(B)-(D) Expert testimony, by way of deposition, from Dr.Ralph Underwager a license psychologist Exhibit 40(A) and Dr.Edward Friedlander. Exhibit 42(A)(B) both of whom state that "reflex relaxation" of the rectum is not signs of sexual abuse, to rebut the state's expert, nurse Annie O'Conner, stating that "reflex relaxation" is signs of sexual abuse and according to the medicla reports "the child's" rectom was consistant with "reflex relaxation.(Tr-330) And from other witnesses to impeach their out-of-court statements.

GROUND 2,(C)(i) DEFENSE ATTORNEY FAILED TO OBJECT AND PRESERVE THEM FOR APPEAL:

(C.1) STATE"S VIOLATION OF RULE 16

Defense counsel was ineffective when he erred failing to object to the state calling nurse Annie O'Conner as a witness violating Rule 16 of the Rhode Island Court Rules of Criminal Procedure(R.I. Ct.R. Crim.P.) brining to the court's attention that the state was in violation of rule 16(a)(6)(7) arguing that defense had not been informed that nurse O'Conner was going to be a witness or what she was going to testify to, and preserving the objection for appeal.

On July 16,1992 plaintiff's lead counsel, THomas Pearlman, filed a timely motion for discovery and inspection pursuant to Rule 16. The state's answer to defense motion for discovery, filed July 20,1992 states under 6&7 "The following may be called to testify as witnesses for the state." None of the twenty six (26) people the state listed as witnesses was the name of Annie O'Conner, nurse practitioner.

Defense counsel's failure to object denied plaintiff his procedual due process and effective representation. Had defense counsel made a timly objection informing the court of the state's violation of Rule 16 that being the state's nondisclosure of nurse O'Conner, the court would have, in consideration of the alleged nondisclosure, examined four factors. (1) The reason for the nondisclosure, (2) The extent of prejudice to the defendant, (3) The fesibility of rectifying the prejudice by a continuance, and (4) any other relevant factor. STATE v RAMOS 553 A2d 1059 (1989); STATE V LEDDY 559 A2d 356 (R.I. 1989); STATE V BIBEE 559 A2d 618 (R.I. 1989)

For the reason of nondisclosure the trial judice would have to determin if the nondisclosure was intentional or unintentional. If unintentional the trial judice would have to determin if the proposed testimony was relevant. Rule 401 If relevat would it prejudice the defendant. Rule 403 If it was determined that the nondisclosure was intentional then the trial judice would have to grant a new trial. STATE V CONCANNON 457 A2d 1350,1353 (R.I.1983); STATE V ADAME 481 A2d 718,723 (R.I.1984); STATE V VALAQUE 465 A2d 207,214 (R.I.1983); STATE V BRISSON 619 A2d 1099 (R.I. 1983)

To determin if the propsed testimony on nurse O'Conner was relevant the trial judge would have to determin if the testimony had any tendency to make the existence of any fact that is of consequnce to the determinati of the action more probable or less probable than it would be without the testimony. Rule 401 And if so would it be of use to the tier of fact. Rule 702 DAUBERT V DOW 509 U.S. 579, 125 L.Ed.2d 469, 113 S.Ct. 278 (1993): STATE V MOREL 676 A2d 1347,1354-55 (R.I. 1996) Where nurse O"Conner's proposed testimony was on medical scientiffic knowledge the trial judge would have a preliminary hearing to determin the relevancy or lack of. RULe 104 DOW 125 L.Ed.2d at 428; MOREL 676 A2d at 1355; STATE V CAPALBO 433 A2d 242 (R.I. 1981)

Eventhough nurse O'Conner had been qualified by the court as an expert (Tr-312) nurse O'Conner had no first hand knowledge of the alleged victim or of any alleged abuse to the alleged victim. Rule 602 She never seen the alleged victim before, (Tr-320) she never examined or assisted in any examination of the alleged victim, and she never trained or suppervised the alleged examining doctor. (Tr-329)

Where the state did not present any evidence that the alleged victim had been examined nurse O"Conner could not testify that the lack of evidence of abuse to the alleged victim does not mean the abuse did not happen. (Tr-324) She could not testify that the alleged victim had reflex relaxation. (Tr-330) Therefore nurse O'Conner's testimony would have been irrelevant and she would have been excluded from testifying.

Defense counsel's ineffective error, failing to object, and allowing nurse O'Conner's testimony corrobate the alleged vicitm's complaint and bolstered the hearsay evidence of page (7) of state's (6). Defense counsel's ineffectivness in failing to object to the testimony of nurse O'Conner, pursuant to Rule 16, waived plaintiff'd constitutional right to raise the issue on appeal. STATE V UCEIO 450 A2d 809 (R.I.1982); STATE BURKE 522 A2d 725 (R.I. 1987)

In determining the impact of the state's nondisclosure on trial out-come, court applies sliding scale analysis based on blame worthiness of state's failing to disclose, rather than determining whether there is reasonable probability that disclosure would change out-come of proceeding. STATE V BRISSON 619 A2d 1099 (R.I. 1993) When the four factor review as outlined in STATE BIBEE Supra. is applied the reason for the nondisclosure can be dispositive concerning the likelihood of a new trial. If the nondisclosure is deliberate, the effect on the out-come of trial is irrelevant; a new trial must be granted. STATE V WYCHE 518 A2d 907,910 (R.I.1986)

In the case before the court plaintiff believes that the state's nondisclosure of nurse O'Conner, was deliberant. The state had known from its own investigation that the alleged victim was first examined for the alleged abuse by the family pediatrician, Dr. Gernander.

 APP, 19

on January 21,1992 pursuant to the instrucktions of Mr.James Blue, Child Protective Investigator for the Depatrment of Children, Youths and Familes. EXHIBIT #3(D) The state had also known from its investigation that the alleged victim had been re-examinined on February 20,1992, one month latter, by Dr.Jole Lutterman, at the Rhode Island Hospital. EXHIBIT #14(C)

In the state's answer to defense motion for discovery filed on July 20,1992, listed under 6&7, the state listed under (K) the name of Dr. Lutterman and states he will testify to the medical and physical reports of the alleged victim dated 2/20/92. Exhibit 15(F) The state listed under (L) the name of Dr.Grenanda and states that she will testify as to the alleged vic victim's medical records dated 01/21/92. From January 21,1992 to January 12,1993 the state believed that Dr.Grenanda was a qualified and credable witness for the state. However, on January 12,1993, in the state's supplem supplemental answer to defendant's motion for discovery the state now says that Dr.Grenanda is not qualified because of a specific test in determining a condition. EXHIBIT # 16(I)

From February 20,1992 to January 12,1993 the state believed that Dr.Lutterman was avalible and credable as a witness. However, On January 12,1993, again in the state's answer, the state fefers to doctors Flanigan and Ryall as potential witnesses and that they will testify as ex experts in the detection and diagonosis of sexual abuse. EXHIBIT 16(I)

If, as of January 12,1993, the state believed that Dr.Grenanda and Dr. Lutterman were availible, And qualified, the state had foum moths to list nurse O'Conner, or anyone it wished, in the proper form. as it did in the state's supplemental dated July 31,1992 when the state listed James Blue as a witness. EXHIBIT # 15(Q)

Where the state waited to the last minute to have nurse O'Conner testify could only mean that it was deliberate. (Tr-313) And plaintiff should be granted a new trial.

**GROUND (C.2) : COUNSEL FAILED TO REQUEST TRIAL JUDGE TO BE RECUSED:**

During the testimony of John Veazey, the alleged victim's social worker from the Rhode Island Rape Cricic Center, the trial judge told the defense and the satate's attorney that it had been disclosed to him that part of Mr.Veazey's training was recieved by the court's wife, and that it may interject a conflict, and that he certainly did not want the jury to hear it. (Tr-405) The trial judge told the counsel that if counsel's were to get into Mr.Veazey's training that they should not disclose to the jury that the judge's wife was one of Mr.Veazey's suppervisors because it would be tossing the case. (Tr-407)

Defense counsel's ineffectivness failing to request the trial judge to disqualify himself, due to a conflict of intrest, and declare a mistrial, is gross incompetents. The trial judge told defense counsel that the judge's wife was one of the witness' supervisors at the R.I.Rap Crisis Center. This conflict may or may-not have had any effect of the particular ruling the conflict was brought out on(Tr-405) but, counsel could have shown the appearance of impropriety in the hole case where the judge's wife worked at the "R.I. Rape Center" and may have supervised the social worker that counseled the alleged victim.

Where there was this conflict defense counsel should have, at the very least, asked for a hearing to determin if in fact there was a conflict. UNITED <u>STATES V LESLIE</u> 103 F.3d 1093 (2d Cir 1997).

The standard for determining whether recusal is appropriate is an objective one; the judge must determin "whether the charge or lack of impartially is grounded on facts that would create a reasonable doubt concerning the judge's impartially, not in the mind of the judge himself or even necessarlly in the mind of the movant, but rather in the mind of the reasonable man." UNITED STATES V LOPES 944 F.2d 33,37; UNITED STATES V COWDEN 545F.2d 257,265 (1st Cir. 1976) cert. denied 430 U.S. 909; 97 S.Ct. 1181; 51 L.Ed. 2d 585 (1977)

Defense counsel's " factual basis" was handed to him on a silver plater. First, the trial judge told the counsel's "It has been disclosed to me that part of this witnesses training was recived, I think from the Court's wife."

From the begining of the moning sesion on May 21,1993 (Tr-360) to the time the trial judge made the above statement (Tr-405) there had been no breaks or interuptions for the trial judge to be given the information. Therefore, he had to have learned it from out side the court. McCHRISTION V HOOD 551 F.Supp. 1001,1003 (1982)

The trial judge, telling counsel's not to let the jury know that the judge's wife may have been the witnesses superviser because it might toss the case was himself infering that the jury would imply the appearance of impropriety of the judge.

If the judge, the judge's spouse, or someone within the third degree of relationship to one or both of them possesses any non-financia intrest in the case, recusal will be required only of that intrest could be substantilly affected by the out-come of the proceeding. MOODY V SIMMONS 858 F.2d 137,143 citing In re NEW MEXICO NATURAL GAS ANTITRUST LITIGATION 620 F.2d 794,796 (10th Cir. 1980)

Where the trial judge had this conflict and the jury could infer that in fact that the judge's wife would have some influnce with the judge and the witness the defense counsel should have asked for the judge to recuse himself and ask for a mistrial.

**GROUND 2 (C.3) DEFENSE COUNSEL DENIED PLAINTIFF HIS RIGHT TO CONFRONT WITNESS:**

Defense counsel was incompetent when he failed to object to the state using nurse O'Conner to testify to the alleged victim's medical reports in place of Dr. Lutterman, the auther of said reports.

Plaintiff had the right to confront Dr.Lutterman and to know his ability and methoreds of examining children for signs of sexual abuse. PISKET V BOWEN 625 F.Supp. 81(1985) For defense counsel to allow the state to use nurse O'Conner implace of Dr.Lutterman denied plaintiff of that right and left to the jury to infer that nurse O'Conner was qualified to speek on his behalf and explain his records of the alleged victim.

If the out-of-court declarent, Dr.Lutterman, is not available for cross-examination, the trial judge is to make a specific finding that there is just cause for not permitting confrontation before heresay testimony is admitted into evidence. STATE V TAYLOR 562 A2d 445 (1998)

At plaintiff's trial, the trial judge did ask the state why they did not have someone that treated the child. The state said, even after an offer of help from the court, that they couldn,t get him. (Tr-322) For defense counsel to not hold the state to its burden of showing why Dr.Lutterman was not availible or atleast why they did not secure his testimony, by way of deposition prior to trial, was grossly incometent where Dr.Lutterman was the state's primary witness as to the alleged victim's medical condition.

ALSO SEE GROUND 3(C)
PAGE 53



Ground 3(B) False And Misleading Testimony

**GROUND 2 (C.4) COUNSEL FAILED TO OBJECT TO IMMUNED EVIDENCE:**

State's (5) is a letter written by plaintiff, to his attorney, while plaintiff was at the I.M.H. (Tr-160) for a complete evaluation ordered by judge Derrobeo (HB-22). State's (5) contains prejudicial statements to the crimes charged. Defense counsel was ineffective when he did not object to the use of state's (5) for identification and as a full exhibit where state's (5) was protrcted underimmunity. STATE V PAQUETTE 369 A2d 1096 (R.I. 1977)

During state's direct testimony of Det.Malloy in plaintiff's motion to suppress plaintiff's police statement, the trial judge made the statement, "If he wishes, the defendant can testify with immunity." (Tr-59)

In accordance to R.I.G.L. §12_17_15 NOTES TO DECISION (1) only the Attorney General has statutory power to seek immunity. STATE V CLARK 576 A2d 1202,1206 (R.I. 1990) Where as the state did not object the state waived that power as if it had made an application to the court. STATE V RUSSELL 671 A2d 1222 (R.I. 1996) STATE V CHAPPELLE 511 A2d 296 (R.I. 1986)

Granting immunity can only be granted to a witness who is compeled to testify by the presiding justice of the Supreme Court. STATE V CLARK 576 A2d at 1100. THe trial judge making the statement "If he wishes, the defendant can testify with immunity" implied that plaintiff would be compeled to testify and being that defendant would be compelled to testify, the trial judge understood that plaintiff

would exercise his 5th amendment right whereby the court would grant immunity to plaintiff. Also see STATE V MACKEY K1/95-479 hearing date 10/28/97 page 12-13.

Immunity granted under §12-17-15 is transactional immunity rather than "use and derivative use" immunity and is broader than the 5th Amendment Privilege itself. STATE V PAQUETTE 369 A2d at 1099 Transactional immunity which accords full immunity from prosecution for the offense(s) to which the compelled testimony related, affords the witness considerable broader protection than does the 5th Amendment privilege. Immunity from the use of compelled testimony, as well as evidence derived and indirectly therefrom, affords this protection. It prohibits the prosecution authorities from using the compelled testimony in any respect, and it therefore insures that the testimony can not lead to the inflection of criminal penalties. STATE V PAQUETT Supra.

At trial, during the testimony of Thomas Hill, the state asked Mr.Hill if he recognized state's (5) for identification. (Tr-283) Defense counsel, knowing that state's (5) was the letter testified to by plaintiff in plaintiff's suppression hearing erred when he did not object, stating that state's (5) was protected by immunity. Defense counsel's objection as to authenticty and attorney-client privilege was extreme error. As to the objections to authenticity, had defense counsel remembered the testimony of Sharon DePina, where she stated that she received state's (5) from Mr.Hill (Tr-260-61), and that she recognized the handweiting as that of the plaintiff's (Tr-265) established the chain of evidence and presumed counsel authenticity.

As to the objection based on attorney-client privilege, defense counsel knew that state's (5) contained prejidical statements. That is why he did not want the jury to reed it.

Defense counsel was not prepared to argue attorney-client privilege. Defense counsel knew well in advance from the state's supplement answer to defendant's motion for discovery, dated March 04,1993, that the state intended to have witnesses testify to the contents of state's (5) and to the authenticity of the handwriting, and that it was the defendant's.

Defense counsel's error in his objection based on attorney-client privilege was that he presented no law to back his argument. Defense counsel's analogies were without merit where it is well understude that most anything not in the possession of the attorney is fair game. Defense counsel knowing that the plaintiff's testimony at the suppression hearing concerning a letter,state's (5) was testified to under the protection of immunity and in objecting on that ground the defense counsel not only would have had case law to back up his objection, STATE V PAQUETTE 369 A2d 1096 (R.I. 1977) he also had statutory law. R.I.G.L. Z12-17-15

Plaintiff was prejudiced by defense counsel's error whereby he was ineffective by not objecting to state's (5) being introduced for identification in the testimony of Sharon DePina, and for not objecting to the introduction of state's (5) as a full exhibit in the testimony of THomas Hill. STATE V LACHAPELL 308 A2d 467 (R.I. 1073)

Whereby defense counsel's ineffectiveness in not objecting waived any claim and allowed state's (5) to be used at trial. (Tr-430,455-458, 477,487,525-526. Also by waivering any objection defendant was precluded from raising it on direct appeal. Had defense counsel objected, he could have motioned to have counts 2,4,5 dismissed where everything in state's (5) was the state's direct evidence in their prima facie case.

**GROUND 2 (C.5) COUNSEL FAILED TO DETERMIN CREDIBILITY OF ALLEGED VICTIM:**

Defense counsel failed to voir dire the alleged victim to determine the credibility of the alleged victim's proposed testimony, 70 Had Mr.Pearlman and or Mr.Cass read the information supplied by the state, in the state's discovery, they would have discovered inconstencies in the alleged victim's statements and that the inconsistencies were the product of suggestability, bribory, and false beliefs from the twelve (12) or more individual interviewers between January 18,1992 and May 19,1993.

Had counsel's read the information given to them by plaintiff they would have known that there were scientific studies done to show how children, especialy young children, can be made to believe something when in fact it wasn't true simply by consistenly questoning the child over a period of time, making suggestions such as exampels of a interviewers own experiance, the use of dolls, and bribery. see 29,31,32,33,35,36,37,38, 43, See News Artical in back of Exhibit Book exhibits ~~31~~(E) Factors behind false allegations to 31(N) Conclusions, 33(L),35(U), 36(F) Interviews of childten to 36(L), 36(N) The nature of the allegations, 37(A)-37(Q), 38(A)-38(K).

As stated the alleged victim was consistenly questioned by twelve (12), or more, individuals between January 18,1992 and May 19,1993. They were:

Jean Bryant the alleged victim's step-sester Exhibit 6(A)

JAmes Blue investigator for D.C.Y.F. Exhibit 3(B)

Dr.Angela Grenander the alleged vicitm's life long pediatrician Exhibit 4

Sharon DePina the alleged victim's mother Exhibit 8(A)-8(D),9)E)

Det. Michael Malloy Det. for the Pawtucket Police. Exhibit 9(A)-9(D)

Det. Linda Stafferd Det. for the Pawtucket POlice. Exhibit 9(A)-9(D)

Susan Strong-Archer case worker for D.C.Y.F. Exhibit 9(A),11(B)

Marland Pelletier case worker for D.C.Y.F. Exhibit 11(D)

Dr. Jole Lutterman examining physician of the alleged victim at R.I. Hospital. Exhibit 14(C)-14(L)

Someone from the Pawtucket Community Counseling Center. Exhibit 8(C)

Lin Furcht the alleged vicitm's first counselor at the R.I. Rape Crisis Center Exhibit 24(A)- 24(L)
Crisis Center

John Veazey the alleged vicitm's second counselor at the R.I. Rape Crisis Center. Exhibit 24(A)-24(L)

Jean Bryant, plaintiff's then twenty four (24) year old daughter, was the first person to question the alleged vicitm. (BH-2) of side (2); Exhibit 6(A) In Ms.Bryant's statement to the Pawtucket Police Exhibit 6(A) Ms.Bryant states that the alleged victim told her that plaintiff had "touched" her private "part" more than once. Ms.Bryant used continuous pressure, questioning, bribery,stuffed animals, and personal experiences to obtain the desired answers from the alleged victim. Exhibits 6(A)(BH-2,8-9 of side 2) (Tr-22D), 32(C)

Sharon DePina, the alleged victim's mother, was the second person to question the alleged victim. Exhibit 8(B) In Ms. DePina's statement to the Pawtucket Police Exhibit 8(A)-(D) Ms.DePina states that the alleged victim told her that plaintiff "touched" her middle". The alleged victim then said plaintiff did it "ten (10) times", then said "one hundred (100) times".

James Blue, investigator for D.C.Y.F. was the thired person to question the alleged victim. Exhibit 3(F) Mr.Blue's questions were simple, direct, and to the point, ~~in the~~ presence of Ms.Bryant, at the insistance of the alleged victim. The alleged victim told Mr.Blue that plaintiff had "toucher" her private part "once". Exhibit 3(F) Ms. Bryant confirmed that statement by saying that "the alleged victim had told her the same thing" Exhibit 3(G) Ms.Bryant, confirming that statement contradicted the statement she would be making to the Pawucket Police saying that the alleged victim told her "morerhan than once". Exhibit 6(A)

Dr.Angela Grenander, the alleged victim's life long pediatrician, was the fourth person to question the alleged victim. Exhibit 4(A)-(D) At the request of Mr.Blue plaintiff called Dr.Grenander and explained the accusation of the alleged victim and asked if she would examine the alleged victim for signs of sexual abuse. This conversation was confirmed by Mr.Blue. Exhibit 3(D)

The following day Sharon DePina, the alleged victim's mother, took the alleged victim to Dr.Grenander, and in the mother's presants, Dr.Grenander questioned and examined the alleged victim. The alleged victim now states that plaintiff put his finger "in her hole" Exhibit 4(? 4(B) changing it from a touch to penetration.

Det. Michael Malloy and Det. Linda Staed of the Pawtucket POlice, Susan Strong-Archer, Marolin Pelltier case workers from the D.C.Y.F., and Jean Bryant were the firth through nineth persons to question the alleged victim. Exhibits 8(C),9(A)(D)

On Feburary 14,1992 the above people was at plaintiff's home questioning the alleged victim. From whatever answers they got from whatever questions they asked it was desided to take the alleged victim to the Pāwtucket Police Station and question the alleged victim more. During this questioning period, conducted by Det. Malloy, the alleged victim now graduates her accusation from saying that plaintiff "touched" her "one time" and puting his finger in her private to plaintiff also masterbating, <u>puting his private against her private,</u> having her touch
(TP-358) denied this happened, 9(C) Line 28-29
plaintiff's private. It should also be noted that Det. Malloy used naked illustrated drawings for the alleged victim to view and draw circles on. Exhibits 9(A)-(C) 32(C)

Dr.Jole Lutterman was the tenth person to question the alleged victim. Dr.Lutterman was the alleged victim's examining physician at the Rhöde Island Hospital. Exhibit 14(C) The statements that Dr.Lutteran writes in his reports are confuesing at best as to what the alleged victim accully said to him in reference to whatever question he asked the alleged victim. Dr. Lutterman writes in Exhibit 14(C) that the alleged victim states that plaintiff "touched" her down there. This is clairified by quotion marks. Dr.Lutterman is the one using the term "digital penetration". The alleged victim also states that plaintiff did <u>nothing more</u> than "touch her".

However, in the Exhibit 14(E) report Dr.Luterman now says that the alleged victim states that plaintiff touched her vagina with his finger and put them "inside", pluss, she now states that plaintiff made her touch his penis, but, denies any other involvment. In the Exhibit 14(L) Dr.Lutterman writes that the alleged victim states that plaintiff "put his fingers down there" and that plaintiff made her touch his penis but, again denies any use of any other object, mouth or penis.

Det. Malloy and Sharon DePina were the eleven and twelfth people to question the alleged victim, Exhibit 9(E) for the second time. On Febuary 24,1992 Sharon DePina requested Det.Malloy to come to her home stating that the alleged victim had additional disclosures. It can be assumed the reason Ms.DePina wanted Det.Malloy to come to her home, rather than her taking the alleged victim to the police station is because the alleged victim got the ider, from someone, that she might be arrested for what she was about to say. This is a large change of emotions for the alleged victim from when just a little more that a month earlyer when she was being forsed to leave her mother and home and that her sister told her that it was "going to be fun" Exhibit 5(J)

During this time, the alleged victim, again graduated her accusation to three(3) new disclosures. The alleged victim now states that when plaintiff made her touch his penis he made her shake it till white pee came out. She states that plaintiff made her put her finger in her private while plaintiff watched. Det.Malloy even went so far to insure his conviction he had the alleged victim take her mother's hand and place it on her private, and have her draw pitches of plaintiff's private. Exhibits 9(E),19(C)(D)(E)

Next the alleged victim disclosed that plaintiff put his private in her bum. This is a large contradiction to her previous statements where she denied that plaintiff used his penis in this manner. It should be noted that these new disclousres only came up six days after the alleged victim went to Dr. LUtterman.And even though the alleged victim had stated "no other involvement, Dr.Lutterman did make reference to anal reflex relaxation , but did not mention

it in his report to D.C.Y.F. Exhibit 14(C) and he did not contact the police. Sharon DePina did, six days after. 32(C)

The thirteenth person to question the alleged victim was someone from the Pawtucket Community Counseling Center. Sharon Depina states in Exhibit 8(C) that she took the alleged victim to the Community counselling for evaluation. There is no record as to whom the alleged victim saw or what she might have said to what ever questions she was asked.

Ms.Lin Furcht was the fourteenth person to question the alleged victim. The only record of Ms.Furcht talking to the alleged victim is in Exhibit 24(A) where John Veazey, the alleged victim's replacement counsellor, states that Ms.Furcht was counselling the alleged victim sense January 1992.

John Veazey was the fifteenth person to question the alleged victim. Exhibit 24(A)-(L) NOTE: 24(M)-(Q) is a typed copy of 24(E)-(L). Mr.Veazey's techniques in dealing with sexually abused children consisted of "bribery", allowing the alleged victim to play with whatever she wanted to; (Tr-410) "play therapy", interpreting the alleged victim's play as to whether the alleged victim was or was not sexualy abused.(Tr-410),"talking therapy", interpreting what the alleged victim says as to whether the alleged victim was or was not sexualy abused; "pushing", repeated questions.(Tr-413)

Eventhough Mr.Cass requested to voir dire the alleged victim to determine her copetency (Tr-234) he neglected to request to voir dier her on the issue of "~~credability~~ reliability" of her purposed testimony. Just because the alleged victim new the difference between a truth and a lie does not mean she could not have "false beliefs" created, possibly, by being suggestively interviewed by the twelve (12) or more interviewers stated above, or possably by over zelous people e.g. sister and mother, both of whom said that they them selfs had been sexualy abused and that they talked to the alleged victim about their experiance. Exhibits 6(A),24(A)~~(N)~~ or by over zelous D.C.Y.F. CASE WORKERS THAT JUST HAD TO PROVE something even though their legal advisor said "no legal action needed" Exhibit 3(N)(O) or by a doctor, Dr.Lutterman, whom the alleged victim was brought to at the insistance of a State official, e.g. police, D.C.Y.F. case worker, or the Attorney General's office to purpusly find abuse, Exhibit 14(H) because Dr. Grenanda's report to Mr.Blue states that she could not find <u>any</u> signs of sexual abuse and that the alleged victim was not credible and needed counseling; Exhibit 3(J) and or by a counselor at the Rape Crisis Center "whos job it is to find signs of sexual abuse.(tr-414) see Exhibits 29, 31, 32, 33, 35, 36, 37, 38, 43, ~~38(A)-(K)~~ and <u>STATE V MICHAELS</u> 625 A2d 489

When the legal practioner evaluates scientific information, the natural habit is to look for cases, studies, experiments and opinions that support the argument and that the scientific information is accepted by the scientific community. Neither Mr.Pearlman and or Mr.Cass used the information supplyed by plaintiff that told them that a child is susceptible to being "brain washed".

Had they looked at all the information by plaintiff and read the discovery from the state defense counsel would have had two choices. (1) petition the court to dismiss the charges for lack of credible complaing witness. And (2) put the information before the finder-of-fact by using expert testimony.

**GROUND 2 (C.6) DEFENSE COUNSEL FAILED TO OBJECT TO STATE"S (6) AS EVIDEN!**

Defense counsel did not object to state's (6) as evidense where no foundation was laid to show that state's (6) was infact the alleged victim's medical records. (Tr-330-331)

State's (6) contains at least seven pages of the alleged victim's medical records from the Rhode island Hospital. No where before or during nurse O'Conner's testimony was state's (6) shown to be infact the alleged victim's records. The state only asked nurse O'Conner to look at page (7) of state's (6) and what the page was. Nurse O'Conner only said that it was a protocol that she had developed. (Tr-326-327)

Where no foundation was layed to introduce state's (6) defense counsel should have objected, especially where page (7) of state's (6) was so important for the state to prove their case in chief.

**GROUND 2 (C.7) DEFENSE COUNSEL FAILED TO GET EXCULPATORY RECORDS:**

The state set a time frame that plaintiff allegedly sexualy abused the alleged victim between October 31,1991 and January 20,1992. see IND.No. P1/92-1973-A The state arived at this time frame pursuant to the alleged victim's mother's statement to Pawtucket Police in her questioning the alleged victim . She arrived at the time fram. Exhibit 8(B)

Had defense counsel obtained plaintiff's work record, plaintiff's wife's school records, and the records from the Pawtucket Community Counseling Center that provided a baby sitting service for plaintiff's family, defense counsel could have shown reasonable doubt as to plaintiff's opportunity to comit the offence.

Defense counsel had available to him a letter from plaintiff's employer that was sent to Mr.Pearlman stating that plaintiff was working from Auguest 28,1991 to November 18,1991. Exhibit 23(J) as a truck driver traveling all 48 states. Had counsel obtained plaintiff's work record (i.e. Log Book) it would have shown that plaintiff was not at home on October 31,1991 to November 18,1991.

Defense counsel had avalible to him, through discovery, information that plaintiff was working for Briggs Asso. Exhibits 7(B)(C) Had defense counsel obtained plaintiff's work records (i.e. Field reports) he could have shown that plaintiff did not have an opportunity, at least during the day, to comit the offence.

Defense counsel had available to him, through discovery, information that plaintiff had two (2) baby sitters that was provided by the C.E.S. program at the Pawtucket Community Counseling Center and that plaintiff's wife had stated that Lucille Paradis and other baby sat between August 1991 to February 17 1992. Exhibit 8(C)

Had defense counsel obtained these records he could have shown that, at least during the time the alleged victim was in the care of the baby sitter, plaintiff did not have the opportunity to comit the offense.

As stated, the state set the time fram from October 31,1991 to January 20,1992 a total of eighty two (82) days. Eventhough the defense counsel knew that time was not an element of the criminal violation he knew that time was important to determine what happened when. (Tr-346)

THe alleged victim told her mother that plaintiff abused her when her mother was in school. Exhibit 8(C) and that her brothers were not home. (BH-13) This would imply that it was during the day that the alleged abuse took place.

Had defense counsel obtained the above information he could have redused the number of days that the plaintiff would have had to comit the offenses and by redusing the days he could have brought into question if more than one act happened on the same day where the alleged victim constently stated that <u>all</u> acts happened "in the pallor and on the couch, under a blanket." Exhibits 9(C)(BH-10) (BH-3) 4(C), 8)B), 9)E0

**GROUND 2 (C-8) COUNSEL FAILED TO OBJECT TO JUDGE"S JURY INSTRUCTIONS:**

Defense counsel failed to object to the judge's instructions to the jury as being unduly broad in the definition of penetration, and however slight.

The evidence presented at trial as to count (3) consisted of the alleged victim's testimony stating that the"plaintiff put his private in her back private one time, a little bit" and nurse O'Conner's false, misleading, and hearsay testimony explaining what she looks for in examining children for sexual abuse, and what reflex relaxation was.

THe testimony of nurse O'Conner as discribed in grounds 2 (C-1),(C-6) and 3 (B)(D) explain the false, misleading, and hearsay of her testimony.

The testimony of the alleged victim, standing alone, would not support an instruction of anal intercourse. The alleged victim testified that plaintiff put his private in her back private one time , a little bit. NO evidence was shown, that had plaintiff done such a thing, that he actually penetrated, or even touched the anas "anas" of the alleged victim. THe alleged victim's statement one time, alittle bit would infer that she was "touched" on the buttocks not in the "anas" and the judge's instructions stating the law was erroneous where the law states that penetration must be of the "anas", not simply the grove between the buttocks. see COM. V NYLANDER 26 Mass. App. Ct. 784, 532 N.E.2d 1223

**GROUND 2 (C.9) COUNSEL FAILED TO OBJECT TO IRRELEVANT TESTIMONY:**

Ms.Jean Bryant was the state's first witness. (Tr-215) Defense counsel failed to object to Ms.Bryant's testimony as being irrelevant. Rule 402. Ms.Bryant's testimony was of no assistance to the jury in determining whether the alleged victim was or was notsexualy abused, or that plaintiff was the alleged abuser. First, there was no testimony or evidence presented to show that the alleged victim had in fact been sexualy abused or that plaintiff was the alleged abuser. Had there been such evidence Ms.Bryant's testimony would have been only cumulative. The state's only reason for Ms.Bryant's testimony was to bolster the alleged victim's paposed testimony.

Ms.Sharon DePina testimony was also irrelevant and defense counsel should have objected. (Tr-258) Ms. DePina only testified that she occasionaly left plaintiff alone with the alleged victim when she went to school. (Tr-260) Defense counsel did not get Ms. DePina's school records and counsel did not aske Ms.DePina in cross examination when she went to school, what time she went to school, days or nights, Defense counsel did not get the baby sitting records from the Pawtucket Community Counseling Center that provided the baby sitting service for plaintiff's family to see if the alleged victim was at the baby sitters when Ms.DePina was in school. Defense counsel did not get the plaintiff's work records to show that plaintiff was at work when the alleged victim was at the baby sitters and Ms.DePina was in school and therefore plaintiff would not have had the opportunity to comit the offence charged. State v Barrett 685 A.2d 677, 692 A.2d 819

GROUND 3 (A) PROSECUTIONAL MISCONDUCT IN OPENING STSTEMENT:

The opening statement is an important phase of the trial because it allows the attorney to make a favorable impression with the jury. The attorney's statement demonstrates to the jury the attorney's complete knowledge and mastering of the facts of the case. The attorney informs the jury of what the attorney intends to prove and how the attorney intends to prove it.

When the attorney informs the jury of the proof that the attorney intends to introduce the attorney stresses the issue that the attorney wants the jury to consider. It gives the attorney a unique opportunity to color the evidence with the attorney's theory of the case. This theory provides the jury with a consistant theory of the case which brings all the evidence together.

In the state's opening statement, the prosecutor stated to the jury, seven times, that they would hear testimony and evidence. i.e. "you're going to hear from Cheryl DePina tomorro".(Tr-294)

"you will also hear that after that..."

"you will hear from Police Det. Malloy and it's likely you're going to hear it". (Tr-205)
"you will also hear testimony from medical expert".(Tr-206)
"But you will also hear testimony..."(Tr-207)

The prosecutor using the words "hear" as in the above e.g. carries with it a connotation that the facts had already been proven. STATE V BOWDEN 324 A2d 631 (R.I. 1974)

Unlike BOWDEN, plaintiff does not argue semantics between words. Rather, plaintiff argues that the prosecutor's implication of the word "hear" in his statement, you will hear testimony

from a medical expert. A medical expert will testify that there was "no" sign of injury to the vagina of Cheryl and that that neither confirms or denies that she was touched or penetrated. It is inconclusive, but you will "hear" testimony that there is something called reflex relaxation to Cheryl's anus or backside. (Tr-207) implies implying to the jury that the alleged victim was in fact examined and in that examination it was inconclusive as to whether she was touched or penetrated in the vagina, but it was conclusive that the examination showed that the alledged victim did in fact have reflex relaxation to the anus, and that the expert that testified had some first hand knowledge of such examination. This was not so in the case at bar.

The state called Ms. Annie O'Conner, a nurse practitioner from the Rhode Island Hospital, as the state's last witness, and only medical expert. Even though Nurse O'Conner was qualified as an expert in the field of sexual abuse (Tr-312) Nurse O'Conner had no first hand knowledge of the alledged victim. In fact, Nurse O'Conner stated that she had never seen the alledged victim before. (Tr-320). Nothing in the direct testimony of Nurse O'Conner showed any reference to the alledged victim at all. In fact, the testimony of Nurse O'Conner was nothing more than a free lecture, educating the jury in sexual abuse, where there was no evidence or personal knowledge for Nurse O'Conner to testify to.

Petitioner argues that the prosecutor in his comment to the jury went beyond the limits of his assigned rule and became a heated partison more interested in obtaining A conviction than in seeing that justice was done. State v Bowden 324 A2d at 635.

For the prosecutor to make a statement which will or cannot be supported by proof is, if it relates to significant elements of the case, professional misconduct. The prosecutor with the standing and prestige inherent in being an officer of the court, to present to the jury statement not susceptible of proof, but intends to influence the jury in reaching a verdict, is prosecutional misconduct. United-States-v-Dinitz 424 US 600, 47 L.Ed.2d 267 (Burger, C.J., concurring) at 276, State-v-Mancini 108 RI 261, 274 A.2d 742 (1971) State-v-Weiner 87 RI 314, 140 A2d 502 (1958).

Our Supreme Court said in State-v.-Peters 82 R.I. 292, 107 A.2d 428, 48 ALR.2d 999 (1954) that it should be well to observe that in a criminal case, the prosecuting attorney is in effect the representative of the people and not an advocate in the ordinary meaning of the term. As was said in Goff-v. Commonwealth-241 KY.428, 44 SW.2d 306, 308,'He represents all people of the commonwealth, including the defendant." In Berger-v-United-States 295 U.S. 78,88, 55 ST 627,633, 79 L.Ed 1314 (1935) the court stated that in criminal prosecution the attorney for the government was the representative of a soverignty whose obligation was to govern impartially and that the interest of such office was not that the sovereign "shall win a case, but that justice shall be done."

A prosecutor's comments may so infect the trial with unfairness as to make the resulting conviction a denial of due process. George-v.-Angelone-100 F.3d 353,359 (4th Cir. 1996). The due process clause has been interpreted to forbid prosecutors to obtain jury verdict by means of statements that are seriously misleading or that otherwise prevent the jury from deliberating rationally about defendant's guilt. Hennon-v.-Cooper 109 F.3d [illegible]

330, 332 (7th Cir 1997). For a prosecutor's remarks to have been so the comments must in fact been improper and they must have so prejudice the defendant's substantial right that the defendant was denied a fair trial. George v. Angelone Supra State v Peters 48 ALR.2d at 1002.

The general rule in such situations is that there must be a "good faith" and reasonable basis upon which a prosecutor may believe that such evidence will be offered and deemed admissible at trial. State v Ware 524 A2d 1110,1112 (RI 1987) citing State v Collazl 446 A.2d 1106 (RI 1982) and see American Bar Association Standard (ABA Standard) 3-5.5.

The prosecutor in this case did not have a "good faith" or reasonable basis for making such a statement and passing Nurse O'Conner off as an expert witness knowledgeable of the alleged victim, to support his statement. The prosecutor knew that Nurse O'Conner did not possess any first hand knowledge of either the victim or of the medical reports. He knew this because Nurse O'Conner was called at the last minute. (Tr-313). The prosecutor had known that Dr. Lutterman, the examining physician from Rhode Island Hospital, was the one that made out and signed the reports. The prosecutor had stated in his answer to defense motion for discovery (6&7(k) that Dr. Lutterman would testify. EXHIBIT # 15(J)

For the state not to call Dr. Lutterman, who had personal knowledge and who made out and signed the reports, as a witness, but instead called Nurse O'Conner, who had no personal knowledge of either the victim or the medical reports, as a witness one could only infer that the state's only reason for calling Nurse O'Conner was to mislead the jury and influence their

decision. State v. Ware, Supra.

Therefore, the prosecutor's opening remark "you will hear testimony from a medical expert. A medical expert will testify..." was made in "bad faith". State v. Ware Supra, citing Collazo 446 A.2d at 1006 (RI 1982), State v. Peters 48 ALR 2d at 1003.

Although remarks made by prosecutor in opening statement is improper, it is not necessarily error, rather reversible error occurs if allegedly improper comment was so flagrantly impermissible that even precationary instruction would have been insufficient to dispel prejudice in juror's minds and to assure defendant fair and impartial trial. Collazo 446 A2d at 1010.

In the instant case the prosecutor's statement "a medical expert will testify that there was no visible signs of injury..." was outrageous. It is telling the jury that the expert that testifies has personal knowledge of the alleged victim's injury, or lack of, when in fact the expert did not.

At the end of state's opening, after the jury was removed, defense motioned for a mistrial, on unrelated matters. (Tr-207-211). However, after discussion on the unrelated matters, the trial justice stated three times, that he would charge the jury saying "the arguments and statements of attorneys are not evidence." (Tr-211, 212,213). The trial justice charged the jury after the first witness testified (Tr-229 and again at the end of trial. (Tr-538)

The judge's charges before and after Nurse O'Conner testified was not sufficient to cure the prejudicial effect of the prosecutor's implied inference that the jury was going to hear testimony from an expert. State v. Sherman 317 A.2d 445,448 (RI 1974), Powers v. Carvalho 281 A2d 298,302 (RI 1971)

The remark by the prosecutor clearly in its context did violate petitioner's constitutional right to a fair trial which he is entitled. State v. Kozukonis 100 R.I. 298, 214 A.2d 893 (1965) State v. Costa 111 R.I. 602, 306 A.2d 36 (1965). If such error is to be cured, it is essential that a cautionary instruction be given immediately in order that the seed planted by the statement will not be given time to germinate. State v. Kozukonis, Supra. In addition to immediacy, adequacy is required. The cautionary instruction must be such that the jury is informed in language understandable by the ordinary, reasonable men.

The timeless of the cautionary instructions, standing alone, is not sufficient to cure the error. The cautionary instruction will be lacking in the required adequacy to accomplish such result unless it clearly informs the jury that they may not draw any inference or reach presumptions. State v. Sherman 317 A2d at 448, Powers v. Carvalho 281 a.2d 298, 302 (RI 1971)

Petitioner recognizes that a state's attorney should prosecute with earnestness and vigor; petitioner also acknowledged the prosecutor's duty to refraim from improper methods calculated to produce a wrongful conviction. State v. Pouncey 699 A.2d 901 (CT 1997). This prejudicial effect of this misconduct cannot be disputed, as this case turned largely on the jury's credibility determination of the "expert witness" who testified.

Courts have long recognized that a prosecutor has a strong influence over a jury. We have noted that this influence is even greater in cases involving sexual abuse because such cases exert an almost irresistible pressure on the emotions of the bench and bar alike due to the cases usually turning on the credibility of the defendant and the prosecution!S WITNESS.

As a result, in such instances, a strict adherance to the rule of evidence and appropriate conduct is required to ensure a fair trial. Gravley v. Mills 87 F3d 779,790 (6th Cir. 1996), State v. Gookins 637 A2d 1255 (NJ 1994).

Petitioner understands that it is the defense's obligation to interpose an objection to any impropriety in the prosecutor's opening statement. However, that obligation only applies when, at the time of opening, the attorney hears the impropriety. In the case at bar, the defense could not hear the impropriety of the prosecutor's opening until the state presented Nurse O'Conner as a witness. State v. Peters 48 ALR 2d at 1003. When the state presented Nurse O'Conner as a witness, it was then the state's obligation to correct its mistake, and the defense to move for a sanction such as dismissal of case, dismissal of the charge, or at the very least, instruction from the trial justice.

The trial justice has a front-row seat in the trial and can therefore best judge the effect of improvident remarks upon the jury. State v. Brown 522 A.2d at 211 citing State v. Ucero 450 A.2d 809 (R.I. 1982)

In Peters Supra, our Supreme Court directed the attention of the trial justice to his duty to protect the parties, both in civil and criminal cases, against any utterance or conduct of attorneys which would, or reasonably might tend to prejudice them with the jury. The trial justice with his broad powers and sound discretion should have, on his own motion, either made the proper charge to the jury to cure the prosecutor's error or pass the case. State v. Ucero 450 A.2d at

The determination as whether a statement by counsel in course of trial is harmless or prejudicial cannot be decided by any fixed rule of law--each case must necessarily be determined on its own particular facts. State v. Peters 48 ALR.2d at 1002.

To show the prejudice effect of the prosecutor's statement, petitioner turns to the four-prong test in George v. angelone 100 F.3d 353,360 (4thCir 1996).

(1) The degree to which the prosecutor's remarks have a tendency to mislead the jury and prejudice the accused.

The prosecutor's statement to the jury that they would hear, from the expert, testimony that the alledged victim did or did not have signs of sexual abuse when the expert had no knowledge of such facts was extremely misleading and was highly prejudicial when jury infered that because an expert testified that what the expert testified to was fact.

(2) Whether the remards were isolated or extensive.

The prosecutor's remark was not isolated. Not only did he represent the expert in the opening statement, he also emphasized the importance of the expert's testimony, corroberating, the medical records in his closing argument. (Tr-515, 517, 520)

(3) Absent the remarks, the strength of competent proof introduced to establish the guilt of the accused.

Absent the procecutor's statement, the expert would not have testified. With no expert testimony, no medical records would have been introduced for the expert to corroborate and the jury to infer that there were multiple times of penetration to the rectum. The only evidence left would have been the alledged victim's testimony saying "only one time, a little bit." (Tr-250) (See ground 2(C.8) for explanation of penetration of rectum and the meaning of "a little bit."

(4) Whether the comments were deliberately placed before jury to divert attention to extraneous matters.

The prosecutor's remark in his opening statement was unmistakenly deliberate. The prosecutor used Nurse O'Conner's testimony in place of the examining physician, which the prosecutor had no explanation for. (Tr-322-23). The prosecutor knew that it was improper for him to have a witness which was not on his witness list. Rhode Island Court Rules (RICR) 16, and one that had no knowledge of the alledged victim's injuries or lack of, the examining physician, and of the medcial reports. RICR Rule 102.

Petitioner contends that the prosecutor's remark in his opening statement was most damaging and prejudicial, that it denied petitioner of a fair trial, that petitioner entitled to State v. Verdone 337 A.2d 804 (RI 1975) citing State v. Sherman 113 RI 77, 317 A2d 445 (1974), State v Kezokonis 100 RI 298, 214 A2d 893 (1965), State v Peters 82 R.I. 314, 107 A.2d 428, 48 ALR.2d 999 (R.I. 1954)

**GROUND 3 (B) FALSE AND MISSLEADING TESTIMONY:**

On the afternoon of May 20,1993 at the end of the state's direct case, state's attorney, David Morwitz , called his last witness and only medical expert, Ms.Annie O'Conner, a nurse practitioner, from the Rhode Island Hospital. (Tr-304)

To prevail on a due process claim premised on prosecutor's alledged presentation of false and misleading testimony, plaintiff had to show that testimony was material to the verdic, and prosecutor knew or believed testimony to be false; false evidence is "material" only if there is any reasonable likelihood that false testimony could have effected the verdict. U.S. Constitution Amendment 14 , WESTLEY V JOHNSTON 83 F3d 714 (5th Cir 1996)

Nurse O'Conner's testimony was in two parts; (1) the vaginal area and (2) the anal area. PLaintiff will discuss the vaginal area first. Nurse O'Conner's testimony consering the vaginal area had no reference to the alleged victim at all. Therefore, nurce O'Conner's testimony was not relevant. Rhode Island Rules of Evidence Rule 401. Rule 401 states;

> "Relevant evidence" means evidence having any tendency to make the existence of any facts is of consequence to the determiniation of the action more probable or less probable than it would be without the evidence.

Prior to, and during nurce O'Conner's testimony, the state never produced any evidence or testimony that the alleged victim did or did not have signs of sexual abuse to the vagina area.

Therefore, Nurse O'Conner's testimony concerning the vaginal area was irrelevant. RIRE Rule 402 State v. Barrett 685 A.2d 677 (CT 1996) Where there was NO evidence or testimony for Nurse O'Conner to explain to the jury "that because there were no signs of sexual abuse to the vagina that does not mean that it did not occur." (Tr-317) Nurse O'Conner's testimony was of no assistance to the jury. RIRE Rule 702 State v. Cressey 628 A.2d 696 (NH 1995) and amounted to nothing more than a free lecture on sexual abuse for the jury.

Subsumed in the requirements of Rule 702 is the premise that expert testimony must be reliable to be admissible. For only if the experts testimony is reliable can it assist the jury in understanding the evidence or determine a fact in issue. State v. Cressey 628 A.2d at 698, State v. Nicoletti 471 a.2d 613,617 (RI 1984) Since no issue of injuries or lack of, to the vagina of the alledged victim had been presented and no facts presented to establish that there was or was not signs of sexual abuse to the alledged victim, Nurse O'Conner's testimony was not reliable.

The reliability of evidence is of a special concern when offered through expert testimony because such testimony involves the potential risk that a jury may dispropertionally defer to the statements of the expert and that jury may attach extra importance to an expert's opinion simply because it is given with air of authority that commonly accompanies an expert's testimony.

Expert evidence can only be admissible in a case such as this if it is at least partly based on facts in addition to and independent of the alledged victim's account. Otherwise, the

expert's conclusions are of no value to the jury because they present no new evidence. Therefore, Nurse O'Conner's testimony was not material. U.S. Const. Amend. 14.

Nurse O'Conner's testimony had no probative value to the state where the state made no offer of proof that the alledged victim had been examined and that in that examination that there had been no signs of sexual abuse to the vagina and that because there was no signs of sexual abuse that that did not mean that the abuse did not take place. RIRE Rule 403 Balian v. General Motors 296 A.2d 317 (NJ 1972) citing Stoelting v.Hauck 159 A.2d 385 (1960).

Where Nurse O'Conner had testified that she had never seen the alledged victim before, (Tr-302) and it was unknown if she had any knowledge of Dr. Lutterman, the examining physician, (Tr-329), Nurse O'Conner had no personal knowledge of the alledged victim's injuries or lack of. RIRE Rule 602. Rule 602 conceeds to RIRE 703 (opinion testimony by experts) Rule 703 states:

> "An expert opinion may be based on a hypothetical question, facts or data perceived by the expert at or before the hearing, or facts or data in evidence."

Since there were no "facts or data" perceived by Nurse O'Conner at or before trial, or in evidence, Nurse O'Conner's opinion on an hypothetical question (Tr-318-325) concerning the vagainal area amounted to nothing more than a lecture on sexual abuse for the jury. See State v. Thornley 319 A.2d 94, 113 RI 189 (RI 1974), State v. Durk 26 A.2d 604, 68 RI 73 (R.I. 1942)

Prosecutor's knowing failure to correct false testimony violates due process clause if false testimony reasonably could

have affected judgement of jury. U.S. Const. Amend. 5,14, ~ XXxXXxXXxXXXx ( ) ABA Standard 3-5.6(a). State v. Towns 432 A.2d 688,691 (RI 1981)

The state had known, at least eleven months prior to trial, that Dr. Lutterman, the examining physician, was, other than the alledged victim, the state's primary witness and that Dr. Lutterman was going to testify. EXHIBIT # But, for some reason, that was never fully explained, the state was unable to have Dr. Lutterman testify. (Tr-322-323)

The state had known, as a matter of law, that for the state to use the testimony of Nurse O'Conner would be "false and misleading". RIRE Rule 403. Rule 403 (notes to decisions (a) states:

> "This rule may be invoked to exclude evidence that is prejudicial to defendant to the extent that the negative effect outweighs its probative value. Such evidence is rendered inadmissible if it is prejudicial and irrelevant."

Had defense brought up the issue that the alledged victim did or did not have signs of sexual abuse to the vaginal area, then the state could have used Nurse O'Conner's expert testimony in rebuttal.

Nurse O'Conner's testimony was "misleading" where the jury was influenced by the prosecutor for the jury to infer that the alledged victim had been examined and in that examination there were no signs of abuse to the vagina, but because there were no signs that did not mean that it did not happen.

The prosecutor's presentation of Nurse O'Conner's "false and misleading" testimony and the jury's inference from said false and misleading testimony highly prejudiced petitioner in the jury's findings of guilt on the charge of digital penetration.

Mill v. Scully 826 F.2d 1192 (2d Cir 1987), DeMarce v. U.S. 928 F. 2d 1077 (11 Cir 1991) citing Giglio v. U.S 405 U.S. 150,153, 31 L.Ed2d 104 (1972) citing Mooney v. Holohan 294 U.S. 103,112, 79 L.Ed 791 (1935), citing Pyle v. Kansas 317 U.S. 213, 87 L.Ed 214 (1942), Citing Napue v Illinois 360 U.S. 264, 3 L.Ed2d 1217 (1959) State v. Towns 432 A.2d 688 (R.I. 1981).

The testimony of Nurse O'Conner, concerning the anal area, was also "false and misleading". Nurse O'Conner's testimony on reflex relaxation of the rectal area was, again, nothing more than a free lecture for the jury on sexual abuse.

After Nurse O'Conner's 'lecture', Nurse O'Conner was asked if she had an occasion to review state's (6) for identification, which she said she did. (Tr-326). Note: State's (6) contains at least seven (7) pages of the alledged victim's medical reports signed by Dr. Lutterman, the examining physician, at the Rhode Island Hospital. See EXHIBITS # 14 (C-L) . Note: the state never referred to state's (6) concerning ANY of the testimony of the vaginal area.

Petitioner asserts that the testimony of Nurse O'Conner, co-director of the Child Abuse Program at Rhode Island Hospital (Tr-309), was not sufficient as a foundation for the introduction of state's (6). R.I.C.R.E. Rule 104, Sullivan v. US 404 A.2d 153,158 (D.C. 1979). Even though Nurse O'Conner was qualified as an expert (Tr-311-313) Nurse O'Conner was never asked, nor did she ever state, that the records she viewed were the medical records from the Rhode Island Hospital and used by the examining physician. State v. Nault, 314 A.2d 627,630, 112 RI 687 (RI 1974), citing State v. Gauraner, 194 A 589, 59 RI 173 (1937), State v.

Jamgochian 280 A.2d 320, 109 RI 46 (RI 1971). U.S. v. Bentley 875 F.2d 1114 (5th Cir. 1989), State v. Kelly 554 A.2d 632 (RI 1989). In Gauraner, Supra, the court said:

> "Before a hospital record is admissible in evidence, it MUST affirmatively appear that it was a matter of duty to keep a record in the regular course of the hospital's business, and the person whose duty it was to keep the record, if living, competent and within the jurisdiction, must testify that the entry was made in the regular course of business in his handwriting or under his immediate supervision.
> "If the person who made the entries is dead, incompetent or beyond the process of the court at the time of trial, other witnesses may identify the record as to how and by whom it was kept." Id at 177, 194 A at 591 and followed by State v Pope 414 A.2d 781, 785 (R.I. 1980)

The state never showed that the keeper of the records at Rhode Island Hospital was dead, incompetent or beyond the court's jurisdiction at the time of trial. On the contrary, the state had as its witness, on defense motion to suppress, Ms. Joan O'Connell, keeper of the medical records at Rhode Island Hospital, on May 18, 1993 (Tr-163). Where Ms. O'Connell was available on the 18th, the state should have had her testify on the 20th or show why she was not available before using Nurse O'Conner as an "other witness." Also, the state never showed why the state did not have Dr. Lutterman testify where Dr. Lutterman was the examining physician and the one that signed the reports. The state only said that they could not get him to testify. (Tr-322-323)

After Nurse O'Conner stated she had reviewed state's (6), the state said, "More specifically, if I can direct your attention to page (7). Do you recognize that page?" Which she said she did. (Tr-326-327). Nurse O'Conner explained that page (7) is a protocol that was developed years ago in Boston and that she had brought it with her when she came to work in Rhode Island. (Tr-327). She testified that the protocol was a physical exam page that is specific to the genital area and that it was developed

for the use of medical residents specific training in that area. She stated that the protocol was developed to avoid missing something and to give guidance to things they should be looking for. (Tr. 328)

Nurse O'Conner was then asked to look at the check mark in the column in the middle of the page and what it indicated to her. (Tr.328). Nurse O'Conner stated that, "Looking at the record it would indicate to me that the Child's rectum was consistant with reflex relaxation, as noted." (Tr.330). The fact that Nurse O'Conner testified that she had developed page (7), the protocol, does not make her a qualified witness for the rest of State's (6), Rule 703 and it was prosecutional misconduct to mislead the jury to infer that she had some knowledge of the rest of state's (6), by slippin it in, when in fact the protocol itself was untrustworthy. St. v. Acquistso 463 A2d 122 (RI 1983) adopting the Federal Rule of Evidence Rule 803(6). Nurse O'Conner had testified that her protocol, page (7), had been revised (Tr-327). But never stated what revisions were made. See St. v. Fogarty 433 A.2d 972 (RI 1981), stating that "the doctor had examined this patient solely for the purpose of giving testimony in this court and not for any treatment."

In the case at bar, the alleged victim was taken to the family pediatrician, confirmed by the DCYF investigator, James Blue, EXHIBIT # 3 (D) . Dr. Angela Grenander of East Bay Pediatric has been the alledged victim's pediatrician since the the alledged victim was born. Dr. Grenander examined the alleged victim, per request from petitioner, EXHIBIT #3(D) , for signs of child molestation. Had the state needed an expert to

testify, the state should have called Dr. Grenander. But, because Dr. Grenander had no positive information to secure a conviction, the state insisted the child be taken to the Rhode Island Hospital for examination. Sullivan v. US 404 A.2d 153,185 (RI 1979). There, Dr. Lutterman, the examining physician put on his medical form, EXHIBIT # 14 (H) that the alleged victim had reflex relaxation of the rectum. But, instead of the state having Dr. Lutterman come in to testify, the state had Nurse O'Conner, who had no knowledge of the alleged victim or of the examination, testify to influence the jury with her "lecture" and slip in State's (6). Her purpose was for 'testimony' not as to 'treatment'. Fogarty, Supra. RIRE Rule 703, Advisory Committee's note.

Nurse O'Conner's testimony as to what the check mark in the column in the middle of page (7) indicated to her was asked for the sole purpose of bolstering the alleged victim's testimony and influence the jury that penetration was more than one time, and more than 'a little bit'. US v. Bentley 875 F.2d 1114 (5th Cir 1989). Nurse O'Conner was not asked her opinion. She stated a fact and that fact bolstered the alleged victim's testimony. By Nurse O'Conner stating "that the child's rectum was consistant with reflex relaxation, as noted" was stating that it was a fact that the alleged victim had been examined and in that examination it showed that the victim had reflex relaxation of the rectum.

The determination of the truthfulness or credibility of a witness lies with the exclusive province of the jury. State v James 557 A.2d 471, 473 (RI 1989), State v. Desmarais 479 A.2d 745,748 (R.I. 1984), State v. Castore 435 A.2d 321,326 (R.I. 1981). Because credibility determinations are solely a jury function, a witness is not permitted to offer an opinion concerning

the truthfulness of the testimony of another witness. James 557 A.2d at 473, also see State v. Tavares 590 A.2d 867,870-71(R.I. 1991). State v. Nicloetti 471 a.2d 613,617 (R.I. 1984). Even when a witness does not literally state an opinion concerning the credibility of another witness but his or her testimony would have the same "substantive import" such testimony is inadmissible. See Taveres 590 A.2d at 870-871 citing Commonwealth v. Montanino 409 Mass.500, 576 N.E.2d 1212 (1991).

The defendant in Montanino claimed that the question and response should not have been permitted because it allowed the police officer to state his opinion that the victim was a credible witness. That is, by allowing the officer to testify that the irregularities in the victim's statement were consistent with the manner in which truthful sexual-assault victims relate their experiences, the officer would be stating his opinion that the victim was a credible witness.

In reversing the defendant's conviction, the Supreme Judicial Court of Massachusetts stated, "We believe that the impact on the jury of [the police officer's] observation regarding sexual assault victims had the same effect as if [police officer] had his comments specifically to [the victim's] credibility. We think there is little doubt that [police officer's] comments relating to the credibility of 'most' sexual assault victims would be taken by the jury as [the police officer's] endorsement of the victim's credibility." Montanino 409 Mass.at 504, 567 N.E.2d at 1214. The court went on to say that "while the... testimony fell short of rendering an opinion on credibility of the specific [witness] before the court, we see little difference

in the final result. It would be unreasonable to allow this type of...testimony and then expect the jury to ignore it when evaluating the credibility of the complaining [witness]. Id. (quoting Commonwealth v. Ianello 401 Mass 197,202, 515 N.E.2d 1181,1184 (1987).

Petitioner believes that the testimony at issue in the case at bar was as prejudicial to petitioner as was the testimony in Montanino to the defendant in that case. In the instant case, Nurse O'Conner had no first-hand knowledge that the alleged victim had been sexually molested. Nurse O'Conner did not witness any of the alleged acts of molestation. Any information acquired by Nurse O'Conner regarding the alleged acts of sexual abuse was obtained via the alleged victim's medical records, which again, she had no first-hand knowledge of.

The repeated reference to reflex relaxation could only impress upon the jury that the alleged victim had indeed been sexually abused, just as the alleged victim herself had testified, and that Nurse O'conner believed that the alleged victim had been sexually abused. This is particulary so in light of the fact that Nurse O'Conner was presented as an expert in the field of sexual abuse, her lecture on reflex relaxation, and that she had developed state's exhibit, page (7) of State's (6).

Although Nurse O'Conner's testified that she had developed page (7) of State's (6) (the protocol) was not a literal statement of her belief in the alleged victim's truthfulness, petitioner believes that Nurse O'conner's testimony "Looking at the record it would indicate to me that the child's rectum was consistant with reflex relazation, as noted." had the same substantive

impact and would be perceived by the jury as a conclusive opinion that the alleged victim had testified truthfully. State v. Rodriguez 656 A.2d 192,194095 (R.I.1995), Tavares 590 A.2d at 870-71, Montanino 409 Mass. at 504, 567 N.E.2d at 1214, State v Haslam 663 A.2d 902.

Because the alleged victim was the complaining witness, her credibility was a crucial issue. For the state to have Nurse O'Conner testify was prosecutional misconduct as was prejudicial to defendant and is reversible error.

**GROUND 3 (C) PROSECUTION DENIED PLAINTIFF THE RIGHT TO CONFRONT WITNESS:**

The right of the accused to be confronted by his accusers before the tribunal which pronounces upon the facts has always been deemed one of the most valuable safeguards of the accused. It protects the accused against the peril of conviction by means of ex parte testimony of affidvits given in the witnesses absence of when the accused has no right to cross-examine.

It is generally that the requirement as to confrontation has two purposes-- the main and essential one and a secondary one. The main and essestial purpose is to secure the right of cross-examination, which cannot be had except by the direct and personal putting of questions and obtaining immediate answers. The opportunity to cross examine must be real. A mere formal proffer of an opportunity where the circumstances are such that the accused cannot effectively avail himself of it, is a sufficient observance of the right.

The secondary advantage is it be obtained from the personal appearance of the witness. The judge and the jury are enabled to obtain the elusive and incommunicable evidence of a witness deportment while testifying, and certain subjective moral effect is produced on the witness. It is the right of the accused to have the jury see the witnessacts while under examination and to judge the credibility which right cannot be had unless the witness meets the accused face-to-face in the presence of the jury during the course of the trial.

In the case at bar, the state elicited the testimmony of Ms. Annie O'Conner, a nurse practitioner, from the Rhode Island Hospital to give testimony to evidence that only Dr. Lutterman, the examining physician, could testify to.

The state's strategy was to prove that petitioner digitally penitrated the alledged victim's vagina, and that because there was no signs of penitration that did not mean that it did not happen.

Using the testimony of Nurse O'Conner was nothing more than giving the jury a free lecture on sexual abuse. (Tr-304-325) Nurse O'Conner's testimony had no reference to the alledged victim at all. In fact, Nurse O'Conner had stated that she had never seen the alledged victim before. (Tr-320) The state never produced any evidence before or during Nurse O'Conner's testimony to show that in fact there was or was not any sign of sexual abuse to the alledged victim.

The state had known, from the police reports, that Dr. Lutterman was the examining physician and for some unknown reason, the state did not produce Dr. Lutterman to testify. (Tr-322,323) Instead the state elicited the testimony of Nurse O'Conner.

Failure of the state to have Dr. Lutterman testify denied petitioner the right to confrontation. Denial of confrontation denied petitioner the opportunity to cross-examine Dr. Lutterman on what method or test he used to obtain the results he reached. (Pisket v. Bowen 626 F.Supp 81 (1985)

The state also wanted to prove, through testimony of Nurse O'Conner, that petitioner had penitrated the alledged victim's rectum causing what is known as reflex relaxation. (Tr-325)

The state tried to prove this by showing Nurse O'Conner page (7) of state's (6) (Tr-326) and asking Nurse O'Conner what the check mark in the column in the center of the page indicated to her. (Tr-328) Nurse O'Conner stated, "Looking at the record it would indicate to me that the child's rectum was consistent with reflex relazation, as noted." (Tr-330)

First, there was no offer of proof that state's (6) was in fact the medical records of the alledged victim. U.S. v. Bently 875 F.2d 1114 (5th Cir. 1989). Second, the state denied petitioner's right to confront the author of page (7) of state's (6). Nurse O'Conner could only testify that the protocol that she was asked to review was in fact the protocol that she had developed in Boston MA and that she brought it with her when she came to Rhode Island to work. (Tr-327) However, Nurse O'Conner could not testify that the examining physician used that same protocol because Nurse O'Conner also testified that the protocol had been revised. (Tr-327) And, Nurse O'Conner had no first hand knowledge that Dr. Lutterman had signed that report.

It is the state's obligation to secure, in some manner, the presents or testimony of its witnesses for its case in chief. i.e. subpoena Rule 17, deposition Rule 15(a), Uniform Act to secure the attendance of witnesses from Without the State. R.I.G.L. 12-16-5, State V. Travares 590 A.2d 867 (RI 1991), State v. Brown 709 A.2d 465, 484 (RI 1998), State v. Farquharson 655 A.2d 84 (NJ 1995), Manochio v Moran 708 F.Supp 473 (RI 1989).

The state had known, at least eleven months, prior to trial, that Dr. Lutterman was, other than the alledged victim, the state's primary witness.

The state violated petitioner's constitutional right to confrontation when the state used the testimony of Nurse O'Conner in place of Dr. Lutterman.

If the out-of-court declarant is not available for cross-examination, the trial justice is to make a specific finding that there is just cause for not permitting confrontation before hearsay testimony is admitted into evidence. State v. Taylor 562 A.2d 445 (1989)

In the instant case the trial justice asked the prosecutor at side bar: (Tr-322)

**Court:** "Why don't we have someone hear from the Rhode Island Hospital that treated this child? What is going on?"

**State:** "I could write a book on that."

**Court:** "Well. I will write a subpoena if you want me to."

**State:** "Can't serve it."

**Court:** "Where is he hiding?"

**State:** "If I knew, it would be a different story."

**Court:** "Well, you have got the Pawtucket Police Department as well as the State Police assistnace if you want".

**State:** "No, I don't think it would be fruitful."

The above colloque could not satisfy Taylor where there was no specific finding that Dr. Lutterman was unable to testify. The trial justice only said, "Well, I have the understanding that you are getting at..." (Tr.322) and later saying, "... there is someone who refused to testify, which I will take up later with the people at Rhode Island Hospital." and then telling the state, "So be sure your sheets are clean." (Tr-323) There wasn't anything said as to why Dr. Lutterman was unable to testify.

The state had known for eleven months that Dr. Lutterman was going to testify. ~~Exhibits~~ # The state would have contacted Dr. Lutterman prior to any of the six times the trial date was set to ensure his availability to testify. ~~EXHIBIT~~ #

If for some reason the state learned that Dr. Lutterman could not or would not testify, then the state had the above means in its arsenal to secure his testimony.

Where the state did not use the for-mentioned means denied petitioner his right to confront Dr. Lutterman who was the state's primary witness, other than the alledged victim, but also the author of state's (6). Barber v. Page 390 U.S. 718, 724-724, 20 L.Ed2d 255 (1968).

In Ohio v Roberts 448 U.S. 56, 65 L.Ed2d 597, the Supreme Court established that before introducing a declarent's prior testimony, the confrontation clause requires the prosecutor to show (1) that the use of hearsay is necessary because the the declarent is unavailable Christian v. Rhode 41 F.3d 461, 467 (9th Cir 1994) and (2) that the hearsay bears indicia of reliability sufficient to enable the factfinder to evaluate the truth of the hearsay, citing U.S. v Mchan 101 F.3d 1027 (4th Cir. 1996)

The state failed the Roberts test. The state did not show why Dr. Lutterman was unable to testify, the state only showed that they did not get him to testify. The state could not show that Dr. Lutterman's out-of-court statement beared any indicia of reliability. The state only showed the protocol Nurse O'Conner reviewed was the one she had made in Boston and brought

with her to Rhode Island. It was not shown that Dr. Lutterman had anything to do with the report. The state failing this test denied petitioner his right to confrontation.

The state having Nurse O'Conner testify in place of Dr. Lutterman prejudiced petitioner where the jury was under the allusion that Nurse O'Conner had knowledge of some kind of the alledged victim's medical history where she testified as an expert, to which contributed greatly to the conviction of petitioner on the charges of digital penetration and anal penetration.

**GROUND 3 (D) PROSECUTIONAL MISCONDUCT VIOLATING RULE 16;**

State's attorney, ~~David Morwitz~~, deliberately violated Rule 16 of the Rhode Island Court Rules of Criminal Procedure Rule 16 when he had Ms.Annie O'Conner, a nurse pratcitioner from the Rhode Island Hospitat, to come in and testify, at the last minute. (Tr-313) to explain the medical condition, or lack of, to the alleged victim and to the medical reports of the alleged victim's prepared by, and signed by, Dr.Jole Lutterman.

Defense counsel, Thomas Pearlman, filed a timely motion for discovery prusuant to Rule 16 asking for a list of all the names of persons whom the state expects to call as witness at trial in suport of the state's direct case. Exhibit 15(A)(B)

In the state's answer under 6&7 the state named twentysix (26) people they intended to call as witnesses. They did not name nurse O'Conner. But they did name Dr.Lutterman under (K)

The state had known for almost a year that Dr.Lutterman was going to testify. The state had in its arsenal ways and means of securing Dr.Lutterman's testimony, i.e. subpoena, deporsition, R.I. G.L. 12-16-5, STATE V TRAVARES 590 A2d 876 (R.I. 1991); STATE V BROWN 709 A2d 465,484 (R.I. 1998); MANOCHIO V MORAY 708 F.Supp. 473 (R.I. 1989) For the state not to secure Dr.Lutterman's testimony for trial and use nurse O'Conner was a gross violation of plaintiff's constitutional right to due process and a fair trial.

Also see **GROUND 2 (~~B~~ E-1)**

**GROUND 4 (A) TRIAL JUDGE"S ABUSE OF DISCRETION POWER:**

A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including, but not limited to instances where the judge has a personal bias or prejudice concerning a party or a party's lawyer,or personal knowledge of disputed enidentiary facts concerning the proceeding. Art. VI, Canon 3-E(a)

During the testimony of defense witness, John Veazey, at side bar, the trial judge stated that it had been disclosed to him that part of the witness' training was received from the judge's wife. (Tr-405) Mr.Veazey was the alleged victim's social worker at the Rhode Island Rape Crisis Center (Tr-396) and the defendant's first witness.

THe trial judge knew prior to Mr.Veazey testimony, from defendant's motion in limine, that Mr.Veazey was a potential witness. (Tr-370) The trial judge also had to have known, prior to Mr.Veazey's testimony, that the judge's wife was Mr.Veazet's suppervisor. Mr. Veazey did not testify untill late morning, well after pre-trial motions.

It can be assumed, from the trial record, that the only time the trial judge could have learned that the judge's wife was Mr.Veazey's suppervisor was during the recess in the middle of pre-trial motions. (Tr-377)

It could be assumed that the trial judge believed, from defendant's motion in limine, that there could be a potentinal problem where Mr.Veazey was a social worker at the Rape Crisis Center where the judge's wife was a suppervisor.

The standard for determining whether recusal is approriate is an objective one; the judge must determine "whether the charge of lack of impartially is grounded on facts that would create a reasonable doubt concerning the judge's impartiality, not in the mind of the judge himself or even necessarlly in the mind of the [movent], but rather in the mind of the reasonable man". U.S. v Cowden 545 F.2d 257,265 (1st Cir 1976) Cirt denied 430 U.S. 909, 97 S.Ct. 1181, 51 L.Ed.2d 585 (1977)

When the trial judge learned of the possible conflict, whether before Mr.Veazey's testimony of during, the judge should have disqualified himself. The judge hinself stated that he did not want the jury to hear that Mr.Veazey was suppervised by the judge's wife (Tr-405) and if they did hear it, it would toss the case. (Tr-407) So, the judge himself believed that if the jury heared that the judge's wife was the witness' suppervisor that the jury would question the judge's impartiality.