LEXSEE 532 NE2D 1223

**COMMONWEALTH v. ISAAC B. NYLANDER**

**No. 88-P-680**

**Appeals Court of Massachusetts, Suffolk**

*26 Mass. App. Ct. 784; 532 N.E.2d 1223; 1989 Mass. App. LEXIS 33*

**December 12, 1988 January 20, 1989**

**SUBSEQUENT HISTORY:** [***1] As amended February 8, 1989

**PRIOR HISTORY:**

INDICTMENTS found and returned in the Superior Court Department on December 8, 1987.

The cases were tried before *Robert A. Mulligan*, J.

**DISPOSITION:**

*So ordered.*

**LexisNexis(R) Headnotes**

**COUNSEL:**

*Frank L. Bruno* for the defendant.

*Nijole Makaitis Slezas*, Assistant District Attorney, for the Commonwealth.

**JUDGES:**

Greaney, C.J., Cutter, & Armstrong, JJ.

**OPINIONBY:**

GREANEY

**OPINION:**

[*785] [**1224] A jury in the Superior Court convicted the [***3] defendant on two indictments charging him with rape of a child under sixteen. One indictment (no. 067907) charged rape by natural sexual intercourse; the other (no. 067908) rape by unnatural (i.e. anal) sexual intercourse. He was sentenced to serve forty-five to sixty years on each conviction with the sentences to be served concurrently. The defendant has argued six issues on appeal, the most important of which concern the sufficiency of the Commonwealth's evidence to establish the rapes and the judge's instructions concerning the element of penetration. We affirm the conviction on indictment no. 067907. We reverse the conviction on the other indictment and order further proceedings in that case.

The victim, who was five years old at the time of the incidents, testified that on one occasion the defendant got her to play a "game" with him in the bedroom. The defendant took off the victim's jeans and underpants, leaving her naked from the waist down. The defendant took off his pants and underpants. He got on top of her while she was on the bed and "moved around a little." While moving around, the defendant's "private spot" was touching her "bum". After he was finished, the [***4] defendant wiped the victim's "bum" with a towel. The defendant's actions were demonstrated to the jury by the victim's use of two anatomically correct dolls and "moving the dolls in a rocking motion." The victim indicated that the defendant's "private spot" was the penis on the male doll.

On a second occasion, the child was lying on her back on a couch. The defendant pulled her underpants "halfway down" and took his clothes "halfway down." He then touched her "private spot" with his "private spot." The victim indicated [*786] that the genital opening on the female doll was her "private spot". n1

n1 The victim also testified that on another occasion the defendant removed her pajama

532 N.E. 2d 1223

bottoms, pulled down his pants and then, while she was lying on her stomach, he "rolled around a little" with his "private spot" touching her "bum."

In addition to the victim's testimony and the demonstrations with the dolls, a nurse practitioner testified that the victim had been diagnosed as having gonorrhea and had been treated for [***5] the disease. The prosecutor also called a physician (an internist) who testified that the defendant had been diagnosed as having gonorrhea. This doctor indicated that gonorrhea "has to be acquired through intimate contact." By intimate contact, the doctor meant either genital-to-genital contact or oral-anal contact, at least in a manner that brings the "surface of . . . an infected person [into contact] with the recipient." In the doctor's opinion, casual contact would not be sufficient to transmit the disease.

1. The Commonwealth presented sufficient evidence to permit the jury to infer that the defendant had penetrated the victim while performing acts of natural and unnatural sexual intercourse. The Commonwealth's evidence is similar to the evidence given by the child victim in *Commonwealth v. Reid, 400 Mass. 534, 540-541 (1987),* who testified in terms of sexual touching of her "private parts" by the defendant's penis. The victim in this case clearly identified what she called "private spots" as her genital opening and the defendant's penis, and she indicated that her "bum" was her buttocks. By her testimony and the use of anatomically correct dolls, [***6] the victim demonstrated to the jury the position of her body and the defendant's body during the various incidents.

It reasonably could be inferred from the victim's testimony and her demonstrations with the dolls that the defendant had applied pressure on her and engaged in movements in an effort to ejaculate. In this fashion, the testimony and use of the dolls indicated that the defendant had penetrated the victim. Additionally, the medical evidence pointed to penetration by the [*787] defendant as the cause of the victim's [**1225] gonorrhea. n2 We agree with the defendant that evidence of penetration was necessary to prove the acts of rape charged in both indictments in order to differentiate those acts from other prohibited sexual touchings or conduct such as assault on a child under sixteen with intent to commit rape, see *G. L. c. 265, § 24B*, indecent assault and battery on a child under fourteen, see *G. L. c. 265, § 13B*, or unnatural and lascivious acts on a child under sixteen, see *G. L. c. 272, § 35A*. See *Commonwealth* v. *Cobb, ante* 283, 284-286 (1988). However, the evidence in this case, together with the reasonable inferences that could be drawn therefrom, see *Commonwealth v. Albano, 373 Mass. 132, 134 (1977),* [***7] was adequate to warrant a finding by the jury of penetration on both indictments. Based on the evidence, the judge correctly denied the defendant's motions for required findings of not guilty. n3

n2 The fact that the physician at one point in her direct testimony referred to "surface" contact between the infected person and the recipient as sufficient to transmit gonorrhea did not render her testimony of no evidentiary value on the issue of penetration. The jury were entitled to view the medical evidence in the light most favorable to the Commonwealth. *Commonwealth v. Mandile, 403 Mass. 93, 94 (1988).* When viewed in this light, the medical evidence permitted the jury to find that the disease had been given to the victim by the defendant's penetration of her sexual organ or anus. See cases collected in 3 C. Torcia, Wharton's Criminal Law § 285 n.49 (14th ed. 1980). Also, the Commonwealth did not have to eliminate the victim's uncle, who also may have abused her, as the source of the disease before the jury could draw the inference.

n3 We pause here to deal with another issue argued by the defendant concerning the denial of his motion to dismiss the indictments on the basis that the prosecutor had withheld exculpatory information from the grand jury. The issue lacks substance. The fact that the victim may have been sexually assaulted by her uncle would not have tended to undermine substantially the evidence against the defendant. See *Commonwealth v. Bobilin, 25 Mass. App. Ct. 410, 412-413 (1988).* There was also no need to present evidence to the grand jury about the credibility of the victim's mother. The information obtained from the mother constituted a minor part of the testimony given by the investigating police officer before the grand jury. The mother, therefore, was not an "important witness" whose credibility was crucial to the grand jury's decision. *Commonwealth* v. *Petras, ante* 483, 487-489 (1988). See *Commonwealth* v. *Champagne, 399 Mass. 80 (1987).*

[***8]

2. (a) We reject the defendant's argument that the judge's instructions to the jury on the indictment charging rape by [*788] natural sexual intercourse erroneously defined the element of penetration and permitted the jury to convict the defendant on their finding of an act which constituted an assault with intent to commit rape or an indecent assault and battery.

532 N.E.2d 1224

With respect to this indictment, the judge instructed the jury that they had to find actual penetration to establish a rape. He indicated that penetration permissibly could be found "if the Commonwealth prove[d] beyond a reasonable doubt direct contact of the . . . head of the defendant's penis with the vulva or labia of the alleged victim . . . ." This instruction is essentially a restatement of the language used in *Commonwealth* v. *Baldwin, 24* Mass. App. Ct. 200, 204-205 (1987), to describe the minimum degree of penetration necessary to establish the traditional common law notion of rape. As was said in *Baldwin*: "Intrusion into the vagina itself is not required to make out the wrongful penetration. Touching by the [penis] of the vulva or labia . . . is intrusion enough." *Ibid.* The jury [***9] instructions on this offense were correct and complete.

(b) We agree with the defendant's argument that the jury instructions on the indictment charging rape by unnatural sexual intercourse were impermissibly vague, and, as a result, we conclude that the defendant should be subject to further proceedings in the Superior Court.

With respect to this indictment, the judge instructed the jury that a conviction could be returned if the Commonwealth "prove[d] beyond a reasonable doubt some penetration of the defendant's penis into that area between the alleged victim's buttocks, no matter how slight that penetration might be." "Unnatural sexual intercourse" [**1226] under *G. L. c. 265, § 23*, the revised statute punishing rape of a child, has been defined as including "anal intercourse . . . and other intrusions of a part of a person's body or other object into the . . . anal opening of another person's body." n4 *Commonwealth v. Gallant, 373 Mass. 577, 584 (1977).* While the term "anus" is often used [*789] colloquially to describe a person's buttocks, or the groove between the buttocks, it is the name of a bodily part which has a precise medical definition. Medically [***10] speaking, the term refers to "[t]he very end -- the last inch or so -- of the digestive canal, more specifically of the rectum . . . In practice, the term *anus* is often applied to the orifice or opening of the structure, rather than to the structure itself." 1 Schmidt's Attorneys' Dictionary of Medicine A-273 (1986). The term "anal opening" has never been defined as including the buttocks or the groove between the buttocks.

n4 The definition explains the term "unnatural sexual intercourse," which was not defined by the Legislature, and it becomes part of the statute's meaning until such time as it is changed either by the Legislature or by further judicial construction.

We think the references to "anal intercourse" and "intrusions into the anal opening" in the definition of unnatural sexual intercourse provided by the *Gallant* decision have to be taken as using the word "anus" in its technical sense to describe intercourse which involves penetration of the anus by the penis or an intrusion into that opening [***11] by some other bodily part (such as a finger) or another object. We reach this conclusion for several reasons.

First, the definition of "unnatural sexual intercourse" fashioned by the *Gallant* decision also includes "intrusions . . . into the genital . . . opening of another person's body." *373 Mass. at 584.* A woman's "genital opening" has a precise meaning and includes, in addition to the vagina, the anterior parts of the female sexual organ, known as the vulva and the labia. The use of the term "genital opening" in *Gallant* permitted the court in the *Baldwin* case, *24 Mass. App. Ct. 200, 204-205,* to conclude that penetration of the anterior parts of the female sex organ was enough to prove forcible rape. n5 It is unlikely that the *Gallant* decision would have used a technical term such as "genital opening" in defining one type of unnatural sexual intercourse, while intending, at the same time, that the term "anus" (which is used in defining another type of unnatural sexual intercourse) not be construed in its technical sense.

n5 The proposition that entry of the anterior parts of the female sexual organ is sufficient to prove rape and that it is not necessary for the vagina itself to be penetrated is the rule in the majority of jurisdictions that have considered the issue. See cases collected in Wharton's Criminal Law § 284 n.29.

[***12]

[*790] Second, the *Gallant* decision points out that the Model Penal Code "has been the source of much of the recent [Massachusetts] legislation on rape . . . ." *373 Mass. at 588.* That Code defines "deviate sexual intercourse" (its term for "unnatural sexual intercourse") as "sexual intercourse per os or per anum between human beings who are not husband and wife, and any form of sexual intercourse with an animal." Model Penal Code § 213.2(1)(1962). See *373 Mass. at 589.* It appears that the term "per anum" is used by the Code in the technical sense described above.

Many States have also defined rape to include penetration of the "anus" or "anal opening," as well as contact with the "anus," or "anal intercourse." n6 There are [**1227] no decisions in any of these States suggesting that the crime should be defined for the jury in words different from the words used in the governing

532 N.E.2d 1225

SECTION.
11-37-17. Human Immunodeficiency Virus (HIV) — Mandatory testing.

[redacted]. — The following words and phrases, when used in this chapter, have the following meanings:

(1) "Accused" means a person accused of a sexual assault.

(2) "Force or coercion" means when the accused does any of the following:

(i) Uses or threatens to use a weapon, or any article used or fashioned in a manner to lead the victim to reasonably believe it to be a weapon.

(ii) Overcomes the victim through the application of physical force or physical violence.

(iii) Coerces the victim to submit by threatening to use force or violence on the victim and the victim reasonably believes that the accused has the present ability to execute these threats.

(iv) Coerces the victim to submit by threatening to at some time in the future murder, inflict serious bodily injury upon or kidnap the victim or any other person and the victim reasonably believes that the accused has the ability to execute this threat.

(3) "Intimate parts" means the genital or [redacted] areas, groin, inner thigh, or [redacted] of any person or the breast of a female.

(4) "Mentally disabled" means a person who has a mental impairment which renders that person incapable of appraising the nature of the act.

(5) "Mentally incapacitated" means a person who is rendered temporarily incapable of appraising or controlling his or her conduct due to the influence of a narcotic, anesthetic, or other substance administered to that person without his or her consent, or who is mentally unable to communicate unwillingness to engage in the act.

(6) "Physically helpless" means a person who is unconscious, asleep, or for any other reason is physically unable to communicate unwillingness to an act.

(7) "Sexual contact" means the intentional touching of the victim's or accused's intimate parts, clothed or unclothed, if that intentional touching can be reasonably construed as intended by the accused to be for the purpose of sexual arousal, gratification, or assault.

(8) "Sexual penetration" means sexual intercourse, cunnilingus, fellatio, and [redacted], or any other intrusion, however slight, by any part of a person's body or by any object into the genital or [redacted] of another person's body, or the victim's own body upon the accused's instruction, but emission of semen is not required.

(9) "Spouse" means a person married to the accused at the time of the alleged sexual assault, except that such persons shall not be considered the spouse if the couple are living apart and a decision for divorce has been granted, whether or not a final decree has been entered.

(10) "Victim" means the person alleging to have been subjected to sexual assault.

**History of Section.**
P.L. 1979, ch. 302, § 2; P.L. 1980, ch. 273, § 1; P.L. 1984, ch. 152, § 1; P.L. 1986, ch. 191, § 1; P.L. 1996, ch. 204, § 1; P.L. 1999, ch. 83, § 13; P.L. 1999, ch. 130, § 13.

**Repealed Sections.** The former chapter (G.L. 1896, ch. 277, § 5; G.L. 1896, ch. 281, §§ 3 — 5; G.L. 1909, ch. 343, § 5; G.L. 1909, ch. 347, §§ 3 — 5; G.L., ch. 347, § 8, as enacted by P.L. 1915, ch. 1219, § 2; G.L. 1923, ch. 395, § 5; G.L. 1923, ch. 399, §§ 3 — 5, 8; G.L. 1938, ch. 606, § 5; G.L. 1938, ch. 610, §§ 3 — 5, 8; G.L. 1956, §§ 11-37-1 — 11-37-6; R.P.L. 1957, ch. 31, § 1; P.L. 1974, ch. 118, § 7; P.L. 1979, ch. 141, § 1), concerning rape and seduction, was repealed by P.L. 1979, ch. 302, § 1, and the present material substituted therefor.

**Cross References.** Additional penalty for carrying arms while committing crime, §§ 11-47-3, 11-47-20.

Assault with intent to commit sexual assault, § 11-5-1.

Entry with intent to commit sexual assault, § 11-8-3 et seq.

Killing in perpetration of sexual assault, § 11-23-1.

**Law Reviews.** Caselaw Survey Section: Tort Law, see 4 R.W.U.L. Rev. 808 (1999).

**Comparative Legislation.** Sexual assault:

**Conn.** Gen. Stat. § 53a-70 et seq.

## NOTES TO DECISIONS

Analysis

1. Penetration.
2. Repeal of rape law.
3. Repeal of indecent assault law.
4. Sexual contact.
5. Sexual penetration.
6. Force and coercion.
7. — Evidence.
8. Effect of amendments to crime against nature statute.

**1. Penetration.**

Defendant's motion for acquittal based on lack of actual penetration failed under this section, which only requires "sexual penetration," which includes the act of cunnilingus. State v. Cembrola, 469 A.2d 362 (R.I. 1983).

**2. Repeal of Rape Law.**

The effect of the repeal of former § 11-37-1 (rape) and enactment of present chapter 37 of title 11 as it relates to the crime of rape was merely amendatory in nature; there was never a time when the elements of that offense were not considered criminal and capable of prosecution. State v. Babbitt, 457 A.2d 1049 (R.I. 1983).

**3. Repeal of Indecent Assault Law.**

Where in a prosecution for indecent assault pursuant to former § 11-37-6, the information was not filed until June 24, 1980, there was no prosecution pending when the legislature repealed the indecent-assault section on May 9, 1979. Therefore, the general savings clause of § 43-3-23 did not apply, and defendant's conviction for indecent assault was reversed. State v. Souza, 456 A.2d 775 (R.I. 1983).

**4. Sexual Contact.**

The trial justice committed reversible error in refusing to instruct the jurors that they were required to find beyond a reasonable doubt that the defendant's contact with his niece was for the purpose of his sexual arousal, gratification, or assault, in order to convict under the second-degree sexual-assault statutes, i.e., this section and § 11-37-4. State v. Tobin, 602 A.2d 528 (R.I. 1992).

The evidence was sufficient to sustain the defendant's conviction where, regardless of any specific physical arousal of the defendant, the victim's testimony taken as a whole clearly indicated that the defendant committed the touching for the purpose of sexual gratification. In re David G., 741 A.2d 863 (R.I. 1999).

Evidence that a defendant accused of molesting his young granddaughter was impotent was not dispositive of whether he was capable of committing second-degree child molestation; sexual contact with a purpose of arousal could occur even in the absence of the ability to be physically aroused. State v. Silvia, 798 A.2d 419 (R.I. 2002).

**5. Sexual Penetration.**

The definition of sexual penetration is unambiguous and specific; the Attorney General and the courts do not have unlimited discretion as to what constitutes the crime of sexual assault. When the court instructs a jury or when the state seeks an indictment, neither may exercise any discretion because this section specifically defines sexual penetration. Jacques v. State, 669 A.2d 1124 (R.I. 1995), cert. denied, 517 U.S. 1212, 116 S. Ct. 1833, 134 L. Ed. 2d 937 (1996).

All that is required to establish the first-degree sexual offense of cunnilingus is for the